IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| MICHAEL SHAUGHNESSY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-CV-461 |
| | ) | |
| DUKE UNIVERSITY, PRIVATE DIAGNOSTIC CLINIC, PLLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

This matter is before the Court on a motion to dismiss for lack of subject matter jurisdiction filed by defendant Private Diagnostic Clinic, PLLC. Plaintiff Michael Shaughnessy has not shown that he exhausted his administrative remedies in his Title VII and ADA claims against PDC, which is a prerequisite for jurisdiction. PDC's motion will be granted as to these claims. The Court will retain supplemental jurisdiction over Dr. Shaughnessy's state law claims against PDC, which form part of the same case or controversy as his remaining federal claims against Duke. PDC's request for attorney's fees will be denied.

I.  **Background**

Dr. Shaughnessy is an anesthesiologist who worked at Duke University School of Medicine from 2010 until 2017, when Duke declined to renew his contract. Doc. 19 at ¶¶ 6–7, 59, 85. During this time, Dr. Shaughnessy performed academic activities at Duke and practiced medicine under Duke's "faculty practice plan" as a member of the Private

Diagnostic Clinic. Doc. 24-1 at 2; Doc. 15-1 at ¶¶ 7–8; Doc. 24-2 at ¶¶ 2.1–2.2. PDC is a private limited liability company whose purpose is to "provide a structure through which its Members can engage in the private practice of medicine for private gain, while retaining their academic relationship with Duke University." Doc. 24-2 at ¶¶ 1.1, 2.1.

After his termination, Dr. Shaughnessy filed a charge with the Equal Employment Opportunity Commission alleging that Duke had discriminated against him because of a disability and retaliated against him for opposing disability and sex discrimination, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Doc. 15-2 at 1, ¶ IX. Some months later, the EEOC issued a notice of dismissal and right to sue letter. Doc. 22-1.

In May 2018, Dr. Shaughnessy filed this suit against Duke and PDC. Doc. 1 at 1, 24. In his amended complaint, he asserts claims against Duke and PDC for discrimination and retaliation in violation of the Americans with Disabilities Act and Title VII, as well as state law causes of action against both defendants. *See* Doc. 19 at 2, ¶¶ 88–140. PDC has moved to dismiss the ADA and Title VII claims for lack of subject matter jurisdiction and the state law claims on discretionary grounds. Doc. 22 at 5–14.

## II.  Subject Matter Jurisdiction

Subject matter jurisdiction is a "threshold matter" courts must address before making any decision on the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Federal courts have subject matter jurisdiction over claims brought under Title VII and the ADA only if the plaintiff has exhausted administrative

remedies. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009); *Thiessen v. Stewart-Haas Racing, LLC*, 311 F. Supp. 3d 739, 743 (M.D.N.C. 2018).

Title VII and the ADA have identical exhaustion requirements. *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012); § 2000e-5(b), (f)(1) (Title VII exhaustion requirements); § 12117(a) (incorporating Title VII's enforcement procedures for ADA claims, including its exhaustion requirement). Under both statutes, a plaintiff must file a charge of discrimination with the EEOC before federal courts have jurisdiction. § 2000e-5(b), (f)(1) (Title VII exhaustion requirements); *Sydnor*, 681 F.3d at 593.

At the appropriate time after the charge is filed, a plaintiff may bring a civil action "against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1). The Fourth Circuit interprets this provision to allow civil action *only* against the respondent(s) named in the charge, not against unnamed parties. *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998). "The naming requirement serves two purposes, and is not a mere technicality: First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law." *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 458–59 (4th Cir. 1988);[1] *Alexander v. Diversified Ace Servs. II, AJV*, No. 1:11CV725, 2014 WL 502496, at *8 (M.D.N.C. Feb. 7, 2014).

A claimant fails to exhaust his administrative remedies if the EEOC charge references different actors "than the central factual allegations in his formal suit."

---

[1] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

*Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005).  If a plaintiff sues a defendant who was not named in the EEOC charge, the Court has no subject matter jurisdiction over claims against that defendant, and such claims must be dismissed for failure to exhaust unless an exception applies.  *See Brown v. Minichbauer*, No. 1:13CV474, 2014 WL 12493189, at *2 (M.D.N.C. Apr. 16, 2014), *aff'd*, 585 F. App'x 261 (4th Cir. 2014); *Mayes v. Moore*, 419 F. Supp. 2d 775, 782–83 (M.D.N.C. 2006).

While not directly addressed, PDC appears to be making a factual challenge to subject matter jurisdiction, *see* Doc. 15 at 2 n.1, contending that some or all of Dr. Shaughnessy's jurisdictional allegations are not true.  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (discussing the difference between facial and factual challenges to subject matter jurisdiction and the distinct scope and standard of review for each).  Both parties have submitted evidence, and the Court will therefore treat the matter under the rules applying to factual challenges.  The Court treats the allegations in the complaint as "mere evidence on the issue" of subject matter jurisdiction, *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991), and may consider documents provided by the parties without converting the proceeding to one for summary judgment.  *Adams*, 697 F.2d at 1219.  Dr. Shaughnessy bears the burden of proving the necessary jurisdictional facts by a preponderance of the evidence.  *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

Here, Dr. Shaughnessy's EEOC charge lists only "Duke University" in the box for "Employer . . . Who Discriminated Against Me."  Doc. 15-2 at 1.  PDC is not named on

the charge form, but Dr. Shaughnessy does mention PDC twice in the affidavit he attached to the EEOC charge:

> 7. On or about August 1, 2011, I was hired into a faculty position in the Department of Anesthesiology at Duke University and appointed as an Assistant Professor. As part of the hiring process, I entered into a contract with the Private Diagnostic Clinic, PLLC to work as a physician at Duke Hospital. . . .
>
> 46. Because my contract is being terminated with Duke University, I can no longer be a member of the Private Diagnostic Clinic, PLLC. I can no longer be a doctor at Duke. I am also being denied my profit-sharing, known as "gain share."

Doc. 15-1. Neither assertion indicates any wrongdoing, discrimination, retaliation, or independent acts by PDC. Only Duke is shown as receiving a copy of the right to sue letter the EEOC sent to Dr. Shaughnessy, *see* Doc. 1-1 at 1, and PDC's uncontradicted evidence is that PDC did not know about the EEOC charge until Dr. Shaughnessy filed this lawsuit. *See, e.g.*, Doc. 17 at ¶ 3.

Dr. Shaughnessy's EEOC charge did not satisfy either purpose of the naming requirement as to PDC. Because PDC was not named as the employer in the charge form and the affidavit does not allege any wrongdoing by PDC, the charge did not provide notice to PDC that it was potentially subject to liability, nor did it permit the EEOC to attempt conciliation with PDC. *See Causey*, 162 F.3d at 800–01. Dr. Shaughnessy's passing mention of PDC in the charge affidavit does not make PDC a "respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1).

Because Dr. Shaughnessy has not named PDC as a respondent in his EEOC charge or otherwise identified PDC as an independent wrongdoer, the Court would

5

typically dismiss his claims against PDC for lack of subject matter jurisdiction. *See Mayes*, 419 F. Supp. 2d at 782. However, Dr. Shaughnessy contends that the substantial identity exception excuses the omission of PDC from the EEOC charge.

"[D]istrict courts throughout the Fourth Circuit have recognized a 'substantial identity' exception to Title VII's naming requirement where unnamed defendants are substantially identical, though not necessarily outright identical, to the named defendant." *Keener v. Universal Cos., Inc.*, 128 F. Supp. 3d 902, 915 (M.D.N.C. 2015).[2] "If unnamed defendants are substantially or 'functionally' identical to named ones, then the plaintiff may sue all defendants in a district court action, even though some defendants were unnamed in the administrative action." *Mayes*, 419 F. Supp. 2d at 783.

District courts in the Fourth Circuit generally consider four factors to determine if the substantial identity exception applies:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

---

[2] Although the Fourth Circuit has not explicitly adopted the substantial identity exception, the Circuit "has cited [it] with approval in dicta." *Cook v. N.C. Cent. Univ.*, No. 1:16-CV-87, 2016 U.S. Dist. LEXIS 160583, at *7 n.4 (M.D.N.C. 2016) (citing *Alvarado*, 848 F.2d at 461); *see also EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1186 n.5 (4th Cir. 1981) ("where there is substantial, if not complete identity of parties before the EEOC and the court, it would require an unnecessarily technical and restrictive reading of [Title VII] to deny jurisdiction").

> 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Mayes*, 419 F. Supp. 2d at 783 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)); *Keener*, 128 F. Supp. 3d at 915; *see also Mayo v. Questech, Inc.*, 727 F. Supp. 1007, 1011 (E.D. Va. 1989). The burden is on Dr. Shaughnessy to show that this exception applies, as he has the burden of showing subject matter jurisdiction. *See Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008). Viewing all four factors together, the Court concludes that Dr. Shaughnessy has not established that the substantial identity exception should apply.

As to the first factor, Dr. Shaughnessy's affidavit attached to the EEOC charge shows he knew of PDC's existence at the time he filed the EEOC charge and knew that it was a different entity from Duke. *See* Doc. 15-1 at ¶ 7 (noting he had entered into a separate contract with PDC). This distinction would have been clear to Dr. Shaughnessy when he executed PDC's Operating Agreement some years earlier. *See* Doc. 24-2 at ¶¶ 2.1, 3.1–3.4, art. IV (PDC Operating Agreement, outlining the purpose, membership, and structure of PDC and how the profit share of members such as Dr. Shaughnessy would be determined); Doc. 19 at ¶¶ 7–8. Other than conclusory allegations of alter-ego status discussed *infra*, *see* Doc. 24 at 7–11, he has not asserted that he was unable to distinguish between the roles PDC and Duke played in the alleged unlawful discrimination. The first factor thus weighs against application of the substantial identity exception.

As to the fourth factor, Dr. Shaughnessy does not allege and has presented no evidence that the unnamed party—PDC—represented to him that their relationship was to be mediated through the named party—Duke. *See Mayes*, 419 F. Supp. 2d at 783. While the offer of employment letter from Duke states that Dr. Shaughnessy would be a member of the PDC and outlines various conditions of the membership, Doc. 24-1 at 2–3, the letter was written by Duke, not PDC. Moreover, it specifically notes that a "representative from the PDC will coordinate [signing the PDC Operating Agreement] with you," *id.* at 5, which makes it clear that Dr. Shaughnessy had a direct and separate relationship with PDC. *See* Doc. 24-2. The fourth factor also weighs against application of the substantial identity exception.

Courts often emphasize the second and third factors as "the most important, as they are most reflective of the two-fold purpose of the naming requirement, that is, providing notice and an opportunity for voluntary conciliation." *Keener*, 128 F. Supp. 3d at 915–16; *see also Mayo*, 727 F. Supp. at 1011. As to these factors, Dr. Shaughnessy has not met his burden on the current record. He often does not distinguish in the amended complaint between actions of Duke and actions of PDC,[3] making it difficult to tell whether he contends PDC independently discriminated or retaliated against him or whether his claims against PDC are strictly vicarious, or some combination thereof. This

---

[3] Dr. Shaughnessy acknowledges in the complaint that Duke and PDC are separate entities, Doc. 19 at ¶¶ 2–3, but he then states that "references to 'Duke' shall encompass both Duke and PDC unless otherwise specified." *Id.* at ¶ 3.

8

prevents the Court from assessing whether Duke's and PDC's interests are sufficiently aligned and whether PDC was prejudiced by its absence from the EEOC process.

Dr. Shaughnessy does allege that PDC owned Regional Anesthesia, PLLC, Doc. 19 at ¶ 52, and that the chair of the anesthesiology department at Duke claimed to have the authority to overrule Regional Anesthesia's decision to hire Dr. Shaughnessy and threatened to blackball his prospective job there. *Id.* at ¶ 66. Perhaps this means Dr. Shaughnessy contends the Duke chair was retaliating against him on behalf of PDC. If this is the case, then PDC may be guilty of distinct wrongdoing from Duke's, and its interests in EEOC conciliation would not necessarily align with Duke's. This would make it likely PDC was prejudiced by its inability to participate in the EEOC process.

On the other hand, Dr. Shaughnessy may be contending that PDC is somehow vicariously liable for actions taken by Duke. He did not allege any specific misconduct by PDC in his EEOC charge. To the extent he references individual actors, he refers to them by their Duke titles. *See, e.g.*, Doc. 19 at ¶¶ 34–35. He further alleges in the complaint that "PDC is a company affiliated with Duke and controlled by Duke." *Id.* at ¶ 3. If that is the case, then PDC's interests may be more similar to Duke's interests than if his claims are based on independent conduct or acts by PDC. But still, their interests would likely not be so similar that PDC would suffer no prejudice from a missed opportunity at conciliation.

Given the lack of clarity about the nature of Dr. Shaughnessy's discrimination and retaliation claims against PDC, the Court is unable to say that the interests of PDC and Duke are so similar that PDC's inclusion in the EEOC process was unnecessary, or that

9

there is no unfair prejudice to PDC. *See Mayes*, 419 F. Supp. 2d at 783. Therefore, these two factors join the first and fourth as weighing against application of the substantial identity exception.

Dr. Shaughnessy relies on *Alexander*, 2014 WL 502496, at *10, and *Keener*, 128 F. Supp. 3d at 916, to support application of the exception. Those cases, however, have markedly different facts.

In *Keener*, the plaintiff named "Universal Forest Products" as the respondent in her EEOC charge but later sued "Universal Forest Products, Inc." (UFPI) and "Universal Forest Products Eastern Division, Inc" (UFP Eastern). 128 F. Supp. 3d at 906, 916. Because "Plaintiff could have been referring to UFPI and UFP Eastern by stating that she was employed by 'Universal Forest Products' . . . Plaintiff sufficiently identified the parties so as to give this court subject matter jurisdiction." *Keener*, 128 F. Supp. 3d at 916. Here, Dr. Shaughnessy could not have been referring to PDC when he stated in his EEOC charge he was employed by Duke; their names are totally dissimilar, unlike UFP, UFPI, and UFP Eastern.

In *Alexander*, the plaintiff alleged significantly more facts than Dr. Shaughnessy to support inclusion of additional unnamed corporate defendants. There, the plaintiff alleged that the defendant named in the EEOC charge was a joint venture and alter ego of the unnamed defendants, and the plaintiff had no reason to know of the existence of those additional defendants or their relation to the named defendant. *See* 2014 WL 502496, at *9–10. Dr. Shaughnessy, on the other hand, knew of PDC's existence and its relation to Duke when he filed his EEOC charge—he had a direct contract with PDC and a share in

10

its profits, Doc. 19 at ¶¶ 8, 31, and he ratified PDC's operating agreement, which explained its membership, structure, and relation to Duke. *Id.* at ¶ 8; Doc. 24-2 at arts. III, IV. An additional unnamed defendant in *Alexander* was specifically identified in the EEOC charge as participating in the wrongdoing, and the plaintiff alleged in the complaint that she discussed the EEOC charge with him, thus giving him notice. 2014 WL 502496, at *10. None of this occurred in Dr. Shaughnessy's case.

Neither *Alexander* nor *Keener* stand for the proposition that passing mention of an entity in a charge affidavit with no allegation of wrongdoing is sufficient to exhaust administrative remedies against that entity. Dr. Shaughnessy has not exhausted his administrative remedies against PDC and his Title VII and ADA claims against it must be dismissed. *See Mayes*, 419 F. Supp. 2d at 782.

### III. Supplemental Jurisdiction over State Law Claims against PDC

Dr. Shaughnessy also asserts state law causes of action against PDC for wrongful discharge in violation of North Carolina public policy and tortious interference with prospective economic advantage. Doc. 19 at 28, 31. PDC contends that dismissal of the Title VII and ADA claims against it means the "anchor for supplemental subject matter jurisdiction" over Dr. Shaughnessy's state law claims against PDC is gone. Doc. 22 at 11. The federal claims against PDC are not, however, the only "anchor" for supplemental jurisdiction over the state claims.

28 U.S.C. § 1367(a) allows courts to exercise supplemental jurisdiction over state claims "that are so related to" claims over which the court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States

Constitution." This jurisdictional grant extends to "claims that involve the joinder . . . of additional parties," § 1367(a), provided they form part of the same case or controversy as claims over which the court has original jurisdiction. *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 615 (4th Cir. 2001). State claims are part of the same case or controversy as federal claims when they "derive from a common nucleus of operative fact . . . such that [plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 662 (4th Cir. 1998).

Here, Dr. Shaughnessy has made Title VII and ADA claims against Duke, and the Court has original jurisdiction over those claims pursuant to 28 U.S.C. § 1331. *See also* Doc. 23 at ¶ 4 (Duke's Ans., conceding the Court has subject matter jurisdiction over the action against it). The Court retains original jurisdiction over those claims even after it dismisses Dr. Shaughnessy's Title VII and ADA claims against PDC. The facts underlying Dr. Shaughnessy's state law claims against PDC for wrongful discharge and tortious interference with prospective economic advantage appear to overlap substantially with his allegations of disability discrimination and retaliation against Duke. *Compare* Doc. 19 at ¶¶ 88–118 (Title VII and ADA claims), *with id.* at ¶¶ 119–123 (wrongful discharge claim), *and id.* at ¶¶ 128–134 (tortious interference claim).

Because the state claims against PDC and federal claims against Duke derive from a common nucleus of operative fact, exercise of supplemental jurisdiction is appropriate under § 1367(a). *See Bennett v. Fastenal Co.*, 184 F. Supp. 3d 304, 308 (W.D. Va. 2016) ("Most federal courts require only a loose factual connection between the claims to satisfy the requirement that the claims arise from a common nucleus of operative fact.");

12

*see also Hinson*, 239 F.3d at 615; *Axel Johnson*, 145 F.3d at 662. The facts and witnesses overlap, and requiring Dr. Shaughnessy to litigate his state claims against PDC in separate proceedings in state court would likely result in duplicative proceedings. "[R]esources of the courts and the parties would be wasted by forcing the plaintiff[] to pursue litigation on related claims in both state and federal court . . . ." *Cornerstone Consultants, Inc. v. Prod. Input Solutions*, 789 F. Supp. 2d 1029, 1059 (N.D. Iowa 2011). For reasons of judicial economy, fairness, and convenience, the Court exercises its discretion to retain the state law claims against PDC. *See SV Int'l, Inc. v. Fu Jian Quanyu Indus. Co.*, 820 F. Supp. 2d 677, 693 (M.D.N.C. 2011) (noting that "one basis for exercising supplemental jurisdiction is the need to avoid duplicative evidence for the sake of judicial economy").

PDC relies on § 1367(c)(1), which allows district courts to decline to exercise supplemental jurisdiction over claims that "raise[] a novel or complex issue of State law." *See* Doc. 22 at 12. Even assuming these claims will raise questions of first impression, "§ 1367(c) is permissive; a court need not dismiss a case merely because it presents a novel or difficult issue of state law." *Hunt Valley Baptist Church, Inc. v. Baltimore Cty., Md.*, No. ELH-17-804, 2017 WL 4641987, at *39 (D. Md. Oct. 17, 2017); *see also Shiflett v. GE Fanuc Automation Corp.*, No. 95–0073–C, 1996 WL 481082, at *2 (W.D. Va. July 23, 1996) (declining to dismiss a pendant state law claim that presented a novel or complex question of state law because adjudication of the claim together with federal claims over which the court had original jurisdiction was "in the interests of fairness to the litigants and judicial economy"). Any novelty in questions of state law would not

13

outweigh the economy, convenience, and fairness interests that favor retaining the state law claims against PDC. *See Wood v. Crane Co.*, 764 F.3d 316, 320 n.4 (4th Cir. 2014).

## IV. Attorney's Fees

PDC requests attorney's fees following the Court's dismissal of the Title VII and ADA claims against it. Those statutes allow the Court, "in its discretion, [to] allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 12205; 42 U.S.C. § 2000e-5(k); *see also Tyler v. Kansas Lottery*, 14 F. Supp. 2d 1220, 1228 (D. Kan. 1998) ("An award of attorney's fees is available under the ADA under the same standard as Title VII."). Assuming PDC is a "prevailing party" for obtaining a dismissal for lack of subject matter jurisdiction, *see Baiden-Adams v. Forsythe Transp., Inc.*, 988 F. Supp. 2d 584, 587 (E.D. Va. 2013) (noting this is an open question in the Fourth Circuit), the Court declines to award attorney's fees. Dr. Shaughnessy's contention that the substantial identity exception to the naming requirement applies was not so "clearly foreclosed by existing law" as to warrant such an award. *See Baiden-Adams*, 988 F. Supp. 2d at 588.

## V. Conclusion

Dr. Shaughnessy did not name PDC in his charge of discrimination and he has not alleged sufficient facts or offered sufficient evidence to show that the substantial identity exception applies. Because Dr. Shaughnessy has not exhausted his administrative remedies for his Title VII and ADA claims against PDC, the Court has no subject matter jurisdiction over those claims. Though Dr. Shaughnessy's arguments for jurisdiction ultimately fall short, they were not so unreasonable as to justify an award of attorney's fees. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 414, 422 (1978).

Dr. Shaughnessy's state law claims against PDC for wrongful discharge and tortious interference with prospective economic advantage form part of the same case or controversy as his Title VII and ADA claims against Duke. The considerations of economy, fairness, and convenience weigh in favor of supplemental jurisdiction, which the Court will exercise under § 1367(a).

It is **ORDERED** that:

1. The motion to dismiss filed by the defendant Private Diagnostic Clinic, Doc. 21, is **GRANTED** in part and **DENIED** in part;

2. Dr. Shaughnessy's Title VII and ADA claims are dismissed to the extent they are directed at PDC; and

3. Dr. Shaughnessy's state law claims against PDC are not dismissed.

This the 19th day of November, 2018.

_____
UNITED STATES DISTRICT JUDGE