IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHAEL SHAUGHNESSY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No.: 1:18-CV-00461-CCE-JEP** |
| | ) | |
| DUKE UNIVERSITY, PRIVATE | ) | |
| DIAGNOSTIC CLINIC, PLLC, | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANT DUKE UNIVERSITY'S SECOND SUPPLEMENTAL REPSONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR PRODUCTION

### A. INTRODUCTION & RESERVATION OF RIGHTS

Defendant makes the following answers, responses, and objections to Plaintiff Michael

Shaughnessy's first set of requests for admission, interrogatories, and requests for production.

Defendant's responses are based on Defendant's present knowledge, information, and

belief, as derived from (a) the knowledge and information of present employees of Defendant

gained in their capacity as such, and (b) a review of the files maintained by Defendant that would

be likely to contain the information called for by the Requests. These responses are subject to

amendment and supplementation as Defendant acquires additional information and completes its

review and analysis and are made without prejudice to Defendant's right to use subsequently

discovered or developed information. Defendant states that its responses to the Interrogatories

were prepared in consultation with its attorneys and may not exactly match the words or phrases

that may be used by individual employees in the course of this litigation to describe events,

policies, and practices discussed herein.

No incidental or implied admissions are intended by these Responses. The fact that Defendant responds or objects to any Request should not be taken as an admission that Defendant accepts or admits the existence of any facts assumed by such Request or that such Response or objection constitutes admissible evidence as to any such assumed facts. The fact that Defendant responds to part of or all of any Request is not intended to be, and shall not be construed as, a waiver by Defendant of any part of any objection to any Request.

To the extent any response or produced document contains or refers to matters otherwise protected from discovery by the work product doctrine or the attorney-client privilege, no waiver is intended; nor is any waiver intended as to any other matters that are or may be subject to such protection or otherwise privileged.

Defendant will respond to Plaintiff's Requests in accordance with Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure and will not provide responses or documents to the extent such responses or production would exceed the requirements of those Rules.

These Responses are provided solely for the purpose of and in relation to this action.

# REQUESTS FOR ADMISSIONS

1. Admit or deny that the contractual agreement (the "Contract") between Duke and Dr. Shaughnessy for the 2016-2017 fiscal year established a definite term of employment for Dr. Shaughnessy.

   RESPONSE: **Denied on grounds the request as stated indicates a perpetual definite term or, at a minimum is vague in this respect, and Plaintiff's reappointment letter states that it is an "annual appointment" which "will expire on June 30, 2017."**

   SUPPLEMENTAL RESPONSE: **Duke admits that Plaintiff's reappointment letter ("the Contract") for the 2016-2017 fiscal year established a definite term of employment for Dr. Shaughnessy which expired on June 30, 2017.**

2. Admit or deny that Duke represented to Dr. Shaughnessy that his contract would be renewed on a continuing annual basis, subject to satisfactory annual performance and programmatic needs.

   RESPONSE: **Denied on grounds the document titled Standard Terms and Conditions for Regular Rank Faculty Appointment provided to Plaintiff in 2011 containing the statement that appointments "will be renewed on a continuing annual basis, subject to satisfactory annual performance and programmatic needs" does not contain or represent a comprehensive statement regarding non-renewal processes and procedures applicable to Plaintiff's employment.**

3. Admit or deny that the Duke Faculty Handbook was incorporated into the Contract existing between Duke and Dr. Shaughnessy.

   RESPONSE: **Denied on grounds the Duke Faculty Handbook contains policies and procedures applicable to Plaintiff's employment, but is not incorporated into Plaintiff's employment contract.**

4. Admit or deny that the right to academic freedom, as described in Section I of Appendix C of the Duke Faculty Handbook, attached hereto as **Exhibit A,** was incorporated into the Contract between Duke and Dr. Shaughnessy.

   RESPONSE: **Denied on grounds the Duke Faculty Handbook contains policies and procedures applicable to Plaintiff's employment, but is not incorporated into Plaintiff's employment contract.**

5. Admit or deny that the process for recommending reappointments for full-time faculty in regular, non-tenure track ranks, as described in Pages C-8 through C-10 of Appendix C of the Duke Faculty Handbook, attached hereto as Exhibit A, was followed by Duke and relied upon with respect to Duke's decision not to reappoint Dr. Shaughnessy for the 2017-2018 fiscal year.

RESPONSE: **Denied on grounds Pages C-8 through C-10 contained in the section of Appendix C beginning on C-7 titled "Report of the Ad Hoc Committee on Procedures for Appointments, Reappointments, and Promotions for Regular, Non-Tenure Track Faculty" constituted recommendations that were not implemented by the School of Medicine.**

6. Admit or deny that, apart from Dr. Shaughnessy, no other Duke faculty member in the Department of Anesthesiology has had their contract non-renewed during Dr. Mathew's tenure as Chair.

RESPONSE: **Admitted.**

7. Admit or deny that Duke has had prior disputes with its faculty regarding the applicability of Pages C-8 through C-10 of Appendix C of the Duke Faculty Handbook, attached hereto as Exhibit A.

RESPONSE: **Duke denies this request on grounds the term "disputes" is vague and undefined. Duke admits that faculty, including the Academic Council, engaged in discussions regarding the portion of Appendix C of the Duke Faculty Handbook titled "Report of the Ad Hoc Committee on Procedures for Appointments, Reappointments, and Promotions for Regular, Non-Tenure Track Faculty" C7-C10.**

8. Admit or deny that Dr. Gavin Martin represented to Dr. Shaughnessy on more than one occasion that the decision to not renew his contract was made "without cause."

RESPONSE: **Admitted.**

9. Admit or deny that Duke believed Dr. Shaughnessy's performance problems had the potential to endanger patient safety.

RESPONSE: **Duke objects to this Request on grounds it cannot be admitted or denied because it is vague and speculative with regard to the phrase "potential to endanger patient safety" as there is always a potential for patient harm of varying degrees. Duke admits, however, that it received reports of concerns about Plaintiff's lack of professionalism, actions causing delay in patient care, and signing patients out from anesthesia while they were still in recovery each of which would or could constitute a deviation from the expected standard of care.**

10. Admit or deny that Dr. Mathew had the authority to overrule hiring decisions made by Dr. Edward Sanders.

RESPONSE: **Duke admits that Dr. Mathew's position gives him the ability to overrule decisions regarding who should service the PDC's contract with Regional Anesthesia, PLLC, made by Dr. Edward Sanders, but that Dr. Mathew has never exercised that authority.**

11.    Admit or deny that Dr. Shaughnessy's lack of commitment to the academics portion of his job duties was a factor in Duke's decision not to renew his contract.

RESPONSE: **Admitted.**

12.    Admit or deny that, during the course of Dr. Shaughnessy's meetings with Dr. Joseph Mathew in early 2017, Dr. Joseph Mathew told Dr. Shaughnessy that he believed Dr. Cheryl Jones' behavior following Dr. Kassik's suicide was driven by "illness."

RESPONSE: **Denied.**

13.    Admit or deny that, during the course of Dr. Shaughnessy's meetings with Dr. Joseph Mathew in early 2017, Dr. Joseph Mathew told Dr. Shaughnessy on more than one occasion that he appeared "unhappy."

RESPONSE: **Denied.**

14.    Admit or deny that in 1991, Duke's then-Provost Griffiths approved the review procedures for reappointment of regular rank, non-tenure faculty, which is described in Pages C8-C10 of the DFH ("Reappointment Review Procedure"), attached hereto as **Exhibit A,** and instructed the deans of all constituent schools of Duke University to implement the same.

RESPONSE: **Denied on grounds the statement mischaracterizes the recommendations contained in the "Report of the Ad hoc Committee on Procedures for Appointments, Reappointments, and Promotions for Regular, Non-Tenure Track Faculty" contained in Appendix C of the Duke Faculty Handbook as establishing a specific "Reappointment Review Procedure" that was to be implemented.**

15.    Admit or deny that in 1991, Duke's MedPAC committee, a committee that consisted primarily of Departmental Chairmen of the Duke School of Medicine, voted without dissent to implement the review procedures for reappointment of regular rank, non-tenure faculty featured in Pages C8-C10 of the DFH ("Reappointment Review Procedure"), attached hereto as **Exhibit A.**

RESPONSE: **Denied on grounds the statement mischaracterizes the recommendations contained in the "Report of the Ad hoc Committee on Procedures for Appointments, Reappointments, and Promotions for Regular, Non-Tenure Track Faculty" contained in Appendix C of the Duke Faculty Handbook as establishing specific "review procedures" for the School of Medicine.**

16.     Admit or deny that Duke represented in its appointment letter to Dr. Shaughnessy that he would receive all rights, privileges, and benefits afforded to members of Duke's faculty.

        RESPONSE: **Duke objects to this Request on grounds it cannot be admitted or denied because it does not identify which appointment letter. Duke, however, denies this language is present in the initial offer letter provided to Plaintiff in 2011 or any subsequent reappointment letter.**

17.     Admit or deny that, at any time since 1991, Duke's School of Nursing followed the review procedures for reappointment of regular rank, non-tenure faculty, which is described in Pages C8-C10 of the DFH ("Reappointment Review Procedure"), attached hereto as Exhibit A.

        RESPONSE: **Denied.**

        SUPPLEMENTAL RESPONSE: **Denied on grounds the statement mischaracterizes the recommendations contained in the "Report of the Ad hoc Committee on Procedures for Appointments, Reappointments, and Promotions for Regular, Non-Tenure Track Faculty" contained in Appendix C of the Duke Faculty Handbook as establishing specific "review procedures" for the School of Nursing.**

## INTERROGATORIES

1.   Identify every document which Duke alleges was a source of material terms relevant to the various contracts that existed between Duke and Dr. Shaughnessy, including but not limited to offer letters, relevant editions of the Duke Faculty Handbook, or other policies which Duke alleges governed the various contractual agreements with Dr. Shaughnessy.

     **ANSWER: Duke objects to Interrogatory Number 1 on grounds it seeks information protected from disclosure by the attorney work-product doctrine as it seeks the mental impressions of counsel and a legal conclusion with regard to "material terms" of "contractual agreements." Duke further objects to this interrogatory on grounds that it is vague and ambiguous as written as it purports to request "material terms" of "various contracts" and goes on to indicate that "policies . . . govern[ing] the various contracts" are also encompassed by this interrogatory. The policies themselves as they exist from time to time would not be a "material term" of Duke's employment agreement with Plaintiff. Duke further objects on grounds this interrogatory is overly broad, unduly burdensome and not proportional to the needs of this case to the extent this request seeks identification of every iteration of a Duke policy applicable to Plaintiff's employment over a roughly six-year period, including those that are not relevant to the claims or defenses in this matter.**

     **Without waiving the foregoing objections, Duke, under Rule 33(d) of the Federal Rules of Civil Procedure, refers Plaintiff to the following documents containing terms applicable to Plaintiff's employment: Plaintiff's Offer Letter, Letter of Intent, Reappointment Letters which will be produced in response to Request Number 1.**

     **SUPPLEMENTAL RESPONSE:  Responsive documents are Bates numbered DEFS 31 - 37, 6608 - 6612.**

2.   Identify any Duke policy applicable to regular rank, non-tenure track Duke Clinical faculty on Tracks IV and V at the Duke School of Medicine, which superseded or substituted the review procedures for faculty in regular, non-tenure track ranks, as described in Pages C-8 through C-10 of Appendix C of the Duke Faculty Handbook, attached hereto Exhibit A.

     **ANSWER: Duke objects to Interrogatory Number 2 on grounds it requires adoption of a false assumption, which is improper.  Specifically, it requires the adoption of the assumption that the portion of Appendix C titled "Report of the Ad Hoc Committee on Procedures for Appointments, Reappointments, and Promotions for Regular, Non-Tenure Track Faculty" on pages C7-C10 of the Duke Faculty Handbook was ever implemented or applied to Duke Clinical faculty on Tracks IV and V at the Duke School of Medicine such that superseding or substitution of the procedures contained in this section would be necessary or appropriate.**

Without waiving the foregoing objections, Duke states that the Department of Anesthesiology followed the processes that are standard in the School of Medicine: regular rank, non-tenure track faculty appointments are term appointments that are evaluated annually by Chairs with input from department leadership as well as information relevant to faculty performance from sources including teaching scores, resident evaluations, clinical quality metrics, team feedback/input, records of departmental service, publication record, research activity, documented performance concerns, and data regarding academic progress.

3.     Identify the substantive grounds and metrics by which Dr. Shaughnessy's performance was assessed throughout his employment and identify any documents reflecting the same.

**ANSWER: Duke objects to Interrogatory Number 3 on grounds it is overly broad and unduly burdensome because it seeks identification of "any documents reflecting" assessment of Plaintiff's performance over a roughly six-year period. Duke further objects to this interrogatory to the extent it seeks private and confidential information protected under the peer review privilege.**

**Without waiving the foregoing objections, Duke states that teaching scores, resident evaluations, clinical quality metrics, team feedback/input, records of departmental service, publication record, research activity, documented performance concerns, and data regarding academic progress are all bases informing assessment of Plaintiff's performance.**

**SUPPLEMENTAL RESPONSE: Under Rule 33(d) of the Federal Rules of Civil Procedure, Duke refers Plaintiff to his department file Bates numbered DEF 29 – 193 (inclusive of a copy of Dr. Gavin Martin's file Bates numbered DEF 106 -193).**

**SECOND SUPPLEMENTAL RESPONSE: Under Rule 33(d) of the Federal Rules of Civil Procedure, Duke further refers Plaintiff to Dr. Gavin Martin's file Bates numbered DEF 6900 - 7027).**

4.     Identify each instance in which any agent of Duke University's Department of Anesthesiology spoke to any agent of Regional Anesthesia, PLLC or Duke Regional regarding Dr. Shaughnessy during any time from August 1, 2016 until July 31, 2017. For each instance, identify the agent(s) of Duke (e.g., Dr. Mathew, Dr. Gadsden), the agent of Duke Regional (e.g., Dr. Edward Sanders), the medium by which the communication occurred (e.g., telephone, in-person conversation, email, SMS message), the date of the communication, the subject matter, and the presence of witnesses, if any.

**ANSWER: Duke objects to Interrogatory Number 4 on grounds it seeks information that is not relevant to the claims or defenses of any party, is overly broad and unduly burdensome because seeks identification and recollection of verbal discussions more than two years ago by "any agent" of Duke's Department of Anesthesiology with "any agent" of Regional Anesthesia, PLLC or Duke Regional which may have mentioned Plaintiff unrelated to the facts at issue in this case or**

stated by those with no personal knowledge of the facts at issue, including those who may have seen the Duke Chronical articles concerning this case.

Without waiving the foregoing objections, Duke states that Dr. Edward Sanders spoke with Dr. Mathew 2 or 3 times, likely by telephone, regarding Dr. Shaughnessy's desire to join Regional Anesthesia, PLLC and potential vacancies or timing regarding same. Duke states that Dr. Sanders spoke with Dr. Martin 2 or 3 times, likely by telephone or in-person, regarding Dr. Shaughnessy's desire to join Regional Anesthesia, PLLC and potential vacancies or timing regarding same. Duke further states that to the extent any responsive documents or text messages are located through an ESI search using valid, agreed search terms that are not subject to any privilege or immunity from relevant custodians, Duke will produce the documents. Duke further states that to the extent any responsive documents that are located in a review of known relevant electronic or paper files, the documents will be produced.

5.  Identify each instance of unprofessional conduct Duke alleges Dr. Shaughnessy engaged in and which was a factor considered in the decision not to renew his contract. For each instance identified, state the time, date, location, individuals who witnessed the event(s), whether any formal or informal complaint was made, and, if so, identify the person who made the complaint, the person to whom the complaint was made, and any follow-up.

ANSWER: Duke objects to Interrogatory Number 5 on grounds it is unduly burdensome to satisfy because it asks Duke to prepare a narrative response identifying each instance of unprofessional conduct by Plaintiff covering a roughly six year period dating back to 2011.

Without waiving the foregoing objections, Duke refers Plaintiff, under Rule 33(d) of the Federal Rules of Civil Procedure, to documents contained in Plaintiff's department file, including Dr. Martin's file documentation of instances pre-dating issuance of Plaintiff's non-renewal letter which will be produced in response to Request Number 1. Duke further refers Plaintiff to documents reflecting resident reviews and teaching scores which will be produced in response to Request Numbers 9 and 12.

SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to his department file Bates numbered DEF 29 – 193 (inclusive of a copy of Dr. Gavin Martin's file Bates numbered DEF 106 -193).

SECOND SUPPLEMENTAL RESPONSE: Under Rule 33(d) of the Federal Rules of Civil Procedure, Duke further refers Plaintiff to Dr. Gavin Martin's file Bates numbered DEF 6900 -7027).

6.  Identify and describe each instance in which Dr. Martin counseled Dr. Shaughnessy for "berating staff and trainees" and explain whether each instance was a factor in the decision not to renew Dr. Shaughnessy's contract.

    **ANSWER: Duke objects to Interrogatory Number 6 on grounds it is vague and ambiguous as it appears to attribute a quotation to Dr. Martin without identifying the source or context of the alleged statement. Duke further objects to this interrogatory on grounds that it is overly broad and unduly burdensome to the extent it seeks identification of counseling, including verbal counseling not reduced to writing, covering a roughly six year period dating back to 2011.**

    **Without waiving the foregoing objections, Duke states that Dr. Martin counseled Plaintiff regarding his interactions with trainees and staff on several occasions over the years, and to the extent those discussions may have been reduced to writing, Duke, under Rule 33(d) of the Federal Rules of Civil Procedure, refers Plaintiff to Dr. Martin's file on Dr. Shaughnessy which will be produced in response to Request Number 1. Duke further states that to the extent any responsive documents or text messages are located through an ESI search using valid, agreed search terms that are not subject to any privilege or immunity from custodian Dr. Martin, Duke will produce the documents. Duke further states that Plaintiff's unprofessional discourse occurring prior to the non-renewal decision would have been known to Dr. Martin.**

    **SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to Dr. Gavin Martin's file Bates numbered DEF 106 -193.**

    **SECOND SUPPLEMENTAL RESPONSE: Under Rule 33(d) of the Federal Rules of Civil Procedure, Duke further refers Plaintiff to Dr. Gavin Martin's file Bates numbered DEF 6900 - 7027).**

7.  Identify and describe all material reasons for Duke's decision not to renew Dr. Shaughnessy's contract, including but not limited to identifying the date upon which the decision was made and decisionmaker(s) who made the decision.

    **ANSWER: Duke states that the decision not to renew Plaintiff's reappointment was made by Dr. Mathew, Dr. Martin, and Dr. Gadsden. Duke further states that the decision was finalized on or about January 6, 2017. Duke further states that the decision not to renew Dr. Shaughnessy's appointment was based on Dr. Shaughnessy's lack of engagement in the academic mission of the department and unprofessional behaviors which were not consistent with the department's values. Duke further refers Plaintiff, under Rule 33(d) of the Federal Rules of Civil Procedure, to documents contained in Plaintiff's department file, including Dr. Martin's file documentation of instances pre-dating issuance of Plaintiff's non-renewal letter. Duke further refers Plaintiff to documents reflecting resident reviews and teaching scores that will be produced in response to Request Numbers 9 and 12.**

**SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to his department file Bates numbered DEF 29 – 193 (inclusive of a copy of Dr. Gavin Martin's file Bates numbered DEF 106 -193).**

8.     With respect to each and every affirmative defense alleged by Defendant, state separately for each such defense any and all legal support for the same, the factual basis for such claim and identify all witnesses who have knowledge of the facts that support such claim.

    **ANSWER: Duke objects to Interrogatory Number 8 on grounds this interrogatory is overly broad and unduly burdensome and compound as it seeks all evidence supporting Duke's defenses and seeks a narrative of Duke's legal theories and strategies.**

9.     Identify each person that assisted in providing responses to Plaintiff's discovery requests (including each set of Interrogatories, Requests for Admission, and Requests for Production) and the extent to which each person assisted.

    **ANSWER: Duke objects to Interrogatory Number 9 to the extent it seeks information protected from disclosure by the attorney-client privilege or attorney work-product doctrine. Duke further objects on grounds this request is overly broad and unduly burdensome and seeks information that is not relevant to the claims or defenses of any party to the extent it seeks identification of individuals consulted for identification of the proper person needed to obtain requested information and documents, including payroll records, benefits file, and generate responsive reports, but who possess no knowledge of the facts at issue in this case.**

    **Without waiving the foregoing objections, Duke states the following individuals assisted with providing information for the responses: Dr. Joseph Mathew, Dr. Gavin Martin, Dr. Jeff Gadsden, John Borrelli, Dr. Edward Sanders, Dr. Annemarie Thompson, Dr. Ann Brown and Professor Tom Metzloff.**

10.     Identify and describe each instance of counseling or discussion of performance concerns provided to Dr. Shaughnessy by Drs. Gavin Martin, Jeff Gadsden, Holly Muir, or Joseph Mathew at any time during the 2014-2015, 2015-2016, and 2016-2017 fiscal years and identify any documents related thereto. For each instance identified, describe the time, date, and place, the person(s) who participated, the subject matter of the counseling or discussion, the identity of any witnesses present (either to the counseling/discussion or to the underlying occurrence which precipitated the counseling or discussion), what records were created as a result of the same, and whether each instance was a factor in the decision not to renew Dr. Shaughnessy's contract in January of 2017.

    **ANSWER: Duke objects to Interrogatory Number 10 on grounds it is overly broad and unduly burdensome because it seeks information related to verbal discussions which may not have been reduced to writing covering a three-year period dating back to 2014 and to the extent it seeks a narrative covering this same three-year period.**

**Without waiving the foregoing objections Duke, under Rule 33(d) of the Federal Rules of Civil Procedure, refers Plaintiff to Dr. Martin's file, Dr. Gadsden's file, Plaintiff's department file which will be produced in response to Request Number 1. Duke further refers Plaintiff to responsive documents that are located through an ESI search using valid, agreed search terms that are not subject to any privilege or immunity from relevant custodians which will be produced.**

**SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to his department file Bates numbered DEF 29 – 193 (inclusive of a copy of Dr. Gavin Martin's file Bates numbered DEF 106 -193).**

**SECOND SUPPLEMENTAL RESPONSE: Under Rule 33(d) of the Federal Rules of Civil Procedure, Duke refers Plaintiff to Dr. Gavin Martin's file Bates numbered DEF 6900 - 7027 and Dr. Jeff Gadsden's file Bates numbered DEF 6884 - 6896).**

11. Identify each constituent school (or "unit") of Duke University, which has at any time applied or followed the review procedures for reappointment of regular rank, non-tenure faculty described in Pages C8-C10 of the DFH ("Reappointment Review Procedure"), attached hereto as Exhibit A. For each school, identify the earliest date upon which the Reappointment Review Procedure was put in place and the latest date in which the same was used, if applicable.

    **ANSWER: Duke objects to Interrogatory Number 11 on grounds it is overly broad, unduly burdensome, not proportional to the needs of this case, and seeks information that is not relevant to this case because it seeks information related to schools or "units" unrelated to Plaintiff's employment with the School of Medicine, is not limited in timeframe, and would seek to impose on Duke a burden to obtain information from multiple "units" which had no authority over Plaintiff's employment.**

    **Without waiving the foregoing objections, Duke refers Plaintiff, under Rule 33(d) of the Federal Rules of Civil Procedure, to documents which will be produced in response to Request Number 24.**

    **SUPPLEMENTAL RESPONSE:  Duke refers Plaintiff to Ann Brown's Paper file Bates numbered DEF 6504 – 6606 and to the Faculty Hearing Committee Recording Bates numbered DEF 6607 (native).**

12. Identify each meeting, teleconference, or correspondence in which Dr. Joseph Mathew was provided feedback regarding Dr. Shaughnessy's job performance from January 1, 2015 until June 30, 2017. For each such meeting or correspondence, identify the person(s) participating, the date upon which the meeting, teleconference, or correspondence occurred, the specific aspect of Dr. Shaughnessy's job performance discussed in the correspondence or meeting, and identify any documents or records that reflect the aforesaid correspondence, teleconference, or meeting.

**ANSWER: Duke objects to Interrogatory Number 12 on grounds that it is overly broad and unduly burdensome to the extent it seeks recollection of verbal discussions which may not have been reduced to writing covering a two and a half year period.**

**Without waiving the foregoing objections, Duke refers Plaintiff, under Rule 33(d) of the Federal Rules of Civil Procedure, to Plaintiff's department file which will be produced in response to Request Number 1, and to and responsive documents that are located through an ESI search using valid, agreed search terms, that are not subject to any privilege or immunity from relevant custodians which will be produced.**

**SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to his department file Bates numbered DEF 29 – 193 (inclusive of a copy of Dr. Gavin Martin's file Bates numbered DEF 106 -193).**

13. Identify all persons with whom Defendant, by and through its agents, have communicated (exclusive of counsel acting in a privileged capacity) concerning the allegations in Plaintiff's Complaint. For each communication, identify the time, date, place, and substance of those communications and provide the contact information for each person.

    **ANSWER: Duke objects to Interrogatory Number 13 on grounds that it is overly broad and unduly burdensome and requires unreasonable efforts as it seeks to impose upon Duke the obligation to obtain information regarding discussion of facts alleged by Plaintiff from unidentified employees, without restriction, including employees who may simply have read the Duke Chronicle articles regarding Plaintiff's lawsuit, but who have no first-hand knowledge of Plaintiff or the alleged facts.**

14. Identify each individual who has made any type of complaint, whether written or oral, or who made any allegation of sex- or disability-based discriminatory or retaliatory conduct in the workplace regarding Drs. Joseph Mathew, Gavin Martin, or Jeff Gadsden, at any time in the last five (5) years. For each individual identified, state the date upon which the complaint was received, the medium by which the complaint was communicated, and the subject matter of the complaint, and the last known contact information for the person who made the complaint.

    **ANSWER: Duke objects to Interrogatory Number 14 on grounds it is overly broad and unduly burdensome to the extent it would seek to encompass informal verbal complaints not reduced to writing and not made to human resources, Duke's Office for Institutional Equity, the Ombuds, or made known to Duke by the filing of an EEOC Charge or complaint.**

    **Without waiving the foregoing objections, Duke states that, other than Plaintiff's contentions, it is not aware of any complaints of sex or disability discrimination or**

retaliation against Dr. Mathew, Dr. Martin, or Dr. Gadsden within the last five years.

15. Identify all prior disputes, grievances, appeals, or complaints in which a Duke Faculty member alleged that Duke failed to follow the review process for reappointment of regular rank, non-tenure faculty described in Pages C8-C10 of the DFH ("Reappointment Review Procedure"), attached hereto as Exhibit A, including but not limited to any appeals to the Provost, Dean, or department head, any complaints or grievances filed with the FHC, any civil complaints filed before any judicial or arbitral tribunal, or any demand letters submitted to Duke. For each instance identified, identify the parties involved, the subject matter, the date, the identity of related documents, and the resolution of the same dispute.

ANSWER: Duke objects to Interrogatory Number 15 on grounds it is overly broad and unduly burdensome, not proportional to the needs of this case, and seeks information that is not relevant to this case as it seeks information related to schools or "units" unrelated to Plaintiff's employment with the School of Medicine and is not limited in temporal scope to the timeframe relevant to Plaintiff's employment.

Without waiving the foregoing objections, Duke states that it has not identified and is not aware of a School of Medicine faculty other than Plaintiff who filed a Faculty Hearing Committee grievance or civil action regarding the recommendations contained in the "Report of the Ad Hoc Committee on Procedures for Appointments, Reappointments, and Promotions for Regular, Non-Tenure Track Faculty" on pages C7-C10 of the Duke Faculty Handbook since the beginning of the tenure of Dr. Nancy Andrews who was the Dean of the School of Medicine during Plaintiff's employment.

16. Identify and describe in detail the annual review processes of regular rank, non-tenure track faculty in the Department of Anesthesiology, including the person responsible for conducting the review, input from the individual being reviewed (if any), what individuals are consulted, what reports are generated and whether and to what extent that process was followed for Dr. Shaughnessy's review over the course of the 2014-2015, 2015-2016, and 2016-2017 fiscal years.

ANSWER: Duke states that the Department of Anesthesiology followed the processes that are standard in the School of Medicine for Plaintiff's reviews for academic calendar years 2014-2015, 2015-2016, 2016-2017: regular rank, non-tenure track faculty appointments are term appointments that are evaluated annually by Chairs with input from department leadership as well as information relevant to faculty performance from sources including teaching scores, resident evaluations, clinical quality metrics, team feedback/input, records of departmental service, publication record, research activity, documented performance concerns, and data regarding academic progress.

17. Identify each case report submitted for publication by any regular rank non-tenure track member of Duke faculty in the Department of Anesthesiology over the course of the six (6) years preceding January 2017. For each case report, identify the associated member(s) of Duke faculty, the date of publication, and a description of each case report.

> **ANSWER: Duke objects to Interrogatory Number 17 on grounds it is overly broad, unduly burdensome, and not proportional to the needs of this case because there were approximately 100 regular rank non-tenure track faculty within the Department of Anesthesiology during each of the six years included in this request and Duke does not have a means of querying a system to obtain a report that showing "case reports" submitted for publication and does not maintain a log of case reports submitted for publication. Duke further states that the repository which may contain responsive documents did not exist until 2013.**
>
> **Without waiving the foregoing objections, Duke states that it is currently in the process of manually reviewing documents and will timely supplement this response.**
>
> **SECOND SUPPLEMENTAL RESPONSE: Under Rule 33(d) of the Federal Rules of Civil Procedure, Duke refers Plaintiff to documents identifying publications of Department of Anesthesiology Assistant Professors Bates numbered DEF 6975 - 7025).**

18. Identify every act taken by any Officer (including President and Provost), Institutional Body (including Board of Trustees, Academic Council, and Executive Committee of Academic Council), or Dean of any constituent school of Duke (including School of Medicine and School of Nursing) in order to approve, study, amend, or implement the review procedures for reappointment of regular rank, non-tenure faculty described in Pages C8-C10 of the DFH ("Reappointment Review Procedure"), attached hereto as Exhibit A, from November 1990 until the date of this writing, and identify any documents related thereto. The foregoing includes, but is not limited to, any meeting minutes, transcript(s) of deliberation, or resolution(s) of the Academic Council, Board of Trustees, or Cabinet of Deans or any correspondence by or between the Provost, President, Chair of the Academic Council, Dean of the School of Medicine, or Dean of the School of Nursing.

> **ANSWER: Duke objects to Interrogatory Number 18 on grounds it is overly broad and unduly burdensome, not proportional to the needs of this case, and seeks information that is not relevant because it seeks information related to schools or "units" unrelated to Plaintiff's employment with the School of Medicine and is not limited in temporal scope to the timeframe relevant to Plaintiff's employment. Further, it is undisputed that the recommendations contained in the "Report of the Ad Hoc Committee on Procedures for Appointments, Reappointments, and Promotions for Regular, Non-Tenure Track Faculty" contained on pages C7 to C10 of the Duke Faculty Handbook were not implemented or utilized by the School of Medicine during Plaintiff's employment, thus, Plaintiff's request seeking to impose a burden on Duke to attempt to locate and search archives for documents related to**

multiple positions and institutional bodies spanning a nearly 30-year period, 20-years of which pre-date Plaintiff's employment is unduly burdensome and not proportional to the needs of this case.

Without waiving the foregoing objections, Duke, under Rule 33(d) of the Federal Rules of Civil Procedure, refers Plaintiff to documents which will be produced in response to Request Number 24.

SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to Ann Brown's Paper file Bates numbered DEF 6504 – 6606 and to the Faculty Hearing Committee Recording Bates numbered DEF 6607 (native).

SECOND SUPPLEMENTAL RESPONSE: Under Rule 33(d) of the Federal Rules of Civil Procedure, Duke refers Plaintiff to Ann Brown's computer file Bates numbered DEF 6675 – 6789 and Professor Metzloff's files Bates numbered DEF 7355 - 8512).

19. Identify and describe the efforts taken by Duke's School of Medicine to respond to the suicide of Dr. Kassik in mid-2016, including any departmental or faculty meetings held, instructions given to faculty regarding how to behave towards residents regarding this issue, any objections or complaints raised by any Duke Faculty regarding the aforementioned efforts, and identify any documents related thereto.

ANSWER: Duke objects to Interrogatory Number 19 to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and/or other applicable privileges. Duke further objects to this interrogatory on grounds it is overly broad to the extent it seeks information regarding departments other than the Department of Anesthesiology. Duke further objects to this interrogatory to the extent it seeks information concerning private and confidential information relating to persons who are not a party to this lawsuit, including Dr. Kassik and her family. Duke further objects on grounds this interrogatory seeks information that is not relevant to the claims or defenses in this action as Duke's response to this tragic event is not the subject of Plaintiff's claims in this matter.

20. Identify and describe any efforts undertaken by Dr. Jones at Duke to support those with mental illness following Dr. Kassik's suicide and any complaints or objections made by Dr. Cheryl Jones against Duke regarding its response to Dr. Kassik's suicide, including Duke's response to those complaints, objections, or efforts and the identity of any documents related thereto. The foregoing includes Dr. Jones' attempts to meet with residents following Dr. Kassik's suicide, Dr. Jones' attempts to make literature available for residents and physicians on the topic of suicide, Dr. Sol Aronson's meeting with Dr. Jones related to this issue, any correspondence sent Dr. Jones to any member of the Duke Anesthesiology Department related to Dr. Kassik's suicide, or received by Dr. Jones from any member of Duke's Anesthesiology Department related to Dr. Kassik's suicide, or related to depression or mental illness.

**ANSWER:** Duke objects to Interrogatory Number 20 to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and/or other applicable privilege. Duke further objects to this interrogatory on grounds it seeks information that is not relevant to the claims or defenses in this action as it concerns actions taken by Dr. Jones, not Plaintiff.

21.  Identify the earliest date in which the review procedures for reappointment of regular rank, non-tenure faculty described in Pages C8-C10 of the DFH ("Reappointment Review Procedure"), attached hereto as **Exhibit A,** were added to the DFH and identify **all** documents related to the addition of the aforementioned pages to the DFH (including meeting minutes, motions, bulletins, email and/or written correspondence between the Provost, Academic Council, President, and/or Board of Trustees).

**ANSWER: Duke objects to Interrogatory Number 21 on grounds it is overly broad and unduly burdensome, not proportional to the needs of this case, and seeks information that is not relevant to this case because it is undisputed that the recommendations contained in the "Report of the Ad Hoc Committee on Procedures for Appointments, Reappointments, and Promotions for Regular, Non-Tenure Track Faculty", Duke Faculty Handbook Appendix C7-C10, was in the version(s) of the Duke Faculty Handbook in effect during Plaintiff's employment. Further, this request seeks identification of "all" meeting minutes, motions, bulletins, email and/or written correspondence between the Provost(s), Academic Council(s), President(s), and Board of Trustees spanning a nearly 30-year period, 20-years of which pre-date Plaintiff's employment is unduly burdensome and not proportional to the needs of this case.**

**Without waiving the foregoing objections, Duke, under Rule 33(d) of the Federal Rules of Civil Procedure, refers Plaintiff to documents which will be produced in response to Request Number 24 and to Duke Faculty Handbooks which will be produced in response to Request Number 16.**

**SUPPLEMENTAL RESPONSE:** Duke refers Plaintiff to Ann Brown's Paper file Bates numbered DEF 6504 – 6606, the Faculty Hearing Committee Recording Bates numbered DEF 6607 (native), and Duke Faculty Handbooks Bates numbered DEF 211-6271.

**SECOND SUPPLEMENTAL RESPONSE: Under Rule 33(d) of the Federal Rules of Civil Procedure, Duke refers Plaintiff to Ann Brown's computer file Bates numbered DEF 6675 - 6789 and Professor Metzloff's files Bates numbered DEF 7355 - 8512).**

## FIRST SET OF REQUESTS FOR PRODUCTION

1. Defendant's complete and entire personnel file of Plaintiff, including, but not limited to, the employment benefits, legal and or disciplinary files, to include the file jacket, documents relating to wage and benefits information, résumés or applications for employment by Defendant, documents relating to taxes paid by Defendant or withheld by Defendant, documents in relation to eligibility for employment by Defendant, performance evaluations, documents in relation to attendance, written warnings or reprimands by Defendant, including SRS reports, documentation created in conjunction with Defendant's "Cup of coffee" system, complaints about or by Plaintiff, and any and all unofficial personnel files kept in regards to Plaintiff's employment.

   **RESPONSE: Duke objects to Request Number 1 on grounds it seeks documents protected from disclosure by the attorney-client privilege, work-product doctrine, and/or other applicable privileges. Duke further objections to on grounds the request is overly broad, vague and ambiguous as it purports to request Plaintiff's "personnel file," but notes categories of documents that would not be maintained in a "personnel file" such as documents reflecting Duke tax payment and utilizes the undefined phrase "unofficial personnel files."**

   **Without waiving the foregoing objections, Duke refers Plaintiff to his benefits file, department file, copies of his W-2s, a file maintained by Dr. Martin, and a file maintained by Dr. Gadsden which will be produced.**

   **SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to his benefits file Bates numbered DEF 8 – 28, his department file Bates numbered DEF 29 – 193 (inclusive of Dr. Martin's file Bates numbered DEF 106-193), Plaintiff's W-2s Bates numbered DEF 1 - 7.**

   **SECOND SUPPLEMENTAL RESPONSE: Under Rule 33(d) of the Federal Rules of Civil Procedure, Duke further refers Plaintiff to John Borrelli's file Bates numbered DEF 6790 - 6883, Jeff Gadsden's file Bates numbered DEF 6884 - 6896, and Gavin Martin's file Bates numbered DEF 6900 - 7027).**

2. Defendant's complete and entire personnel file of Dr. Joseph Mathew, including, but not limited to, the employment benefits, legal and or disciplinary files, to include the file jacket, résumés or applications for employment by Dr. Mathew, performance evaluations, documents in relation to attendance, written warnings or reprimands by Defendant, including SRS reports, documentation created in conjunction with Defendant's "Cup of coffee" system, complaints about or by Dr. Mathew, counseling, and documents of any pre-employment communications by and between Dr. Mathew and Defendant.

   **RESPONSE: Duke objects to Request Number 2 on grounds it seeks information protected from disclosure by the attorney-client privilege, attorney-work product doctrine and/or other applicable privileges. Duke further objects on grounds the request is overly broad, vague and ambiguous as it purports to request Dr.**

Mathew's "personnel file," but notes categories of documents that would not be maintained in a "personnel file." Duke further objects on grounds this request seeks private and confidential information that is not relevant to the claims or defenses in this action including any "pre-employment communications by and between Dr. Mathew and Defendant," documents related to Dr. Mathew's clinical performance which is not at issue in this action, Dr. Mathew's benefits elections, and disciplinary actions or counseling, if any, unrelated to alleged sex or disability discrimination or retaliation.

3. Defendant's complete and entire personnel file of Dr. Gavin Martin, including, but not limited to, the employment benefits, legal and or disciplinary files, to include the file jacket, résumés or applications for employment by Dr. Martin, performance evaluations, documents in relation to attendance, written warnings or reprimands by Defendant, including SRS reports, documentation created in conjunction with Defendant's "Cup of coffee" system, counseling, complaints about or by Dr. Martin, and documents of any pre-employment communications by and between Dr. Martin and Defendant.

   **RESPONSE: Duke objects to Request Number 3 on grounds it seeks information protected from disclosure by the attorney-client privilege, attorney-work product doctrine and/or other applicable privileges. Duke further objects on grounds the request is overly broad, vague and ambiguous as it purports to request Dr. Martin's "personnel file," but notes categories of documents that would not be maintained in a "personnel file." Duke further objects on grounds this request and seeks private and confidential information that is not relevant to the claims or defenses in this action including any "pre-employment communications by and between Dr. Martin and Defendant," documents related to Dr. Martin's clinical performance which is not at issue in this action, Dr. Martin's benefits elections, and disciplinary actions or counseling, if any, unrelated to alleged sex or disability discrimination or retaliation.**

4. Defendant's complete and entire personnel file of Dr. Jeffrey Gadsden, including, but not limited to, the employment benefits, legal and or disciplinary files, to include the file jacket, résumés or applications for employment by Dr. Gadsden, performance evaluations, documents in relation to attendance, written warnings or reprimands by Defendant, including SRS reports, documentation created in conjunction with Defendant's "Cup of coffee" system, counseling, complaints about or by Dr. Gadsden, and documents of any pre-employment communications by and between Dr. Gadsden and Defendant.

   **RESPONSE: Duke objects to Request Number 4 on grounds it seeks information protected from disclosure by the attorney-client privilege, attorney-work product doctrine and/or other applicable privileges. Duke further objects on grounds the request is overly broad, vague and ambiguous as it purports to request Dr. Gadsden's "personnel file," but notes categories of documents that would not be maintained in a "personnel file." Duke further objects on grounds this request and seeks private and confidential information that is not relevant to the claims or defenses in this action including any "pre-employment communications by and**

between Dr. Gadsden and Defendant," documents related to Dr. Gadsden's clinical performance which is not at issue in this action, Dr. Gadsden's benefits elections, and disciplinary actions or counseling, if any, unrelated to alleged sex or disability discrimination or retaliation.

5.     Defendant's complete and entire personnel file of Dr. Cheryl Jones, including, but not limited to, the employment benefits, legal and or disciplinary files, to include the file jacket, résumés or applications for employment by Dr. Jones, performance evaluations, documents in relation to attendance, written warnings or reprimands by Defendant, including SRS reports, documentation created in conjunction with Defendant's "Cup of coffee" system, complaints about or by Dr. Jones, settlement agreement(s), severance agreement(s), and documents of any pre-employment communications by and between Dr. Jones and Defendant.

       **RESPONSE: Duke objects to Request Number 5 on grounds it seeks information protected from disclosure by the attorney-client privilege, attorney-work product doctrine and/or other applicable privileges. Duke further objects on grounds the request is overly broad, vague and ambiguous as it purports to request Dr. Jones' "personnel file," but notes categories of documents that would not be maintained in a "personnel file." Duke further objects on grounds this request seeks private and confidential information that is not relevant to the claims or defenses in this action including any "pre-employment communications by and between Dr. Jones and Defendant," documents related to Dr. Jones' clinical performance which is not at issue in this action, Dr. Jones' benefits elections, and disciplinary actions or counseling, if any, and confidential information related to Dr. Jones' separation from Duke. Plaintiff's complaint does not allege Dr. Jones took any actions with respect to Plaintiff or Plaintiff's employment that would be relevant to the claims in this action.**

6.     Defendant's complete and entire personnel file of Sol Aronson, including, but not limited to, the employment benefits, legal and or disciplinary files, to include the file jacket, résumés or applications for employment by Dr. Aronson, performance evaluations, documents in relation to attendance, written warnings or reprimands by Defendant, complaints about or by Dr. Aronson, including SRS reports, documentation created in conjunction with Defendant's "Cup of coffee" system, and documents of any pre-employment communications by and between Dr. Aronson and Defendant.

       **RESPONSE: Duke objects to Request Number 6 on grounds it seeks information protected from disclosure by the attorney-client privilege, attorney-work product doctrine and/or other applicable privileges. Duke further objects on grounds the request is overly broad, vague and ambiguous as it purports to request Dr. Aronson's "personnel file," but notes categories of documents that would not be maintained in a "personnel file." Duke further objects on grounds this request seeks private and confidential information that is not relevant to the claims or defenses in this action including any "pre-employment communications by and between Dr. Aronson and Defendant," documents related to Dr. Aronson's clinical performance**

which is not at issue in this action, Dr. Aronson's benefits elections, and disciplinary actions or counseling, if any. Plaintiff's complaint does not allege Dr. Aronson took any actions with respect to Plaintiff or Plaintiff's employment that would be relevant to the claims in this action.

7.  Any and all SRS reports generated in the 2014-2015, 2015-2016 and 2016-2017 fiscal years and which related to any regular-rank non-tenure track faculty member in Duke's Department of Anesthesiology.

    **RESPONSE: Duke objects to Request Number 7 on grounds it is overly broad, unduly burdensome and not proportional to the needs of this case as reports in the SRS are not able to be generated on the basis of faculty rank or department. A search by physician name -- of which there would be approximately 100-110 regular rank, non-tenure track faculty in the department of anesthesiology for each year requested -- would capture non-responsive reports wherein the individual may have been the generator of the report, listed in the description field as present but whose actions are unrelated to the issue being reported as anesthesiologists are typically present for numerous procedures performed and thus there is no means of culling out false positives. Duke further objects to this request to the extent it seeks to include individuals who worked in different divisions or are not similarly situated to Plaintiff in all material respects.**

    **SUPPLEMENTAL RESPONSE:  Duke is working to identify SRS Professional Conduct reports for similarly situated individuals in Plaintiff's department and will supplement this response.**

8.  Any and all documents created as part of Duke's "Cup of Coffee" system generated in the 2014-2015, 2015-2016, and 2016-2017 fiscal years and which related to any regular-rank non-tenure track faculty member in Duke's Department of Anesthesiology.

    **RESPONSE: Duke objects to Request Number 8 on grounds it is overly broad, unduly burdensome, and not proportional to the needs of this case because there are approximately 100 regular rank, non-tenure track faculty in the Department of Anesthesiology for each of the years identified, including those who worked in different divisions who are not similarly situated to Plaintiff in all material respects. Duke further objects to this request on grounds it seeks information that is not relevant as the "cup of coffee" program that began in July 2015 is a non-punitive, confidential discussion that occurs between the faculty member and a peer under a Duke University Health System clinical peer review committee program created pursuant to N.C. Gen. Stat. § 131E-95.**

9.  Any and all documents evidencing teaching scores for any regular-rank non-tenure track faculty member in the Department of Anesthesiology for the 2014-2015, 2015-2016, and 2016-2017 fiscal years.

**RESPONSE: Duke further objects to Request Number 9 on grounds it is overly broad, unduly burdensome, and not proportional to the needs of this case as it requests documents related to approximately 100 regular rank, non-tenure track faculty for each of the year, including those who worked in different divisions who are not similarly situated to Plaintiff in all material respects.**

**Without waiving the foregoing objections, Duke will produce Plaintiff's teaching scores with information sufficient to show Plaintiff's performance in comparison to others in his department.**

**SECOND SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to documents Bates numbered DEF 8513 – 8909.**

10.     Any and all documents which constitute or describe the basis for Duke's decision not to renew Dr. Shaughnessy's contract.

**RESPONSE: Duke refers Plaintiff to the letter of non-renewal, portions of Dr. Gadsden's note to file, and Dr. Martin's summary that concern events and activities prior to the non-renewal decision, and portions of his department file which will be produced in response to Request Number 1.**

**SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to his letter of non-renewal Bates numbered DEF 29, Plaintiff's department file Bates numbered DEF 29-193 (inclusive of Dr. Martin's File Bates numbered DEF 106-193 and Dr. Gadsden's note to file Bates numbered DEF 103 – 105).**

11.     All documents comprising Defendant's written policies, procedures and guidelines relating to Defendant's computers, computer systems, electronic data and electronic media including, but not limited to, the following:

        a.     Backup tape rotation schedules;
        b.     Electronic data retention, preservation and destruction schedules;
        c.     Employee use policies of company computers, data, and other technology;
        d.     File naming conventions and standards;
        e.     Password, encryption and other security protocols;
        f.     Diskette, CD, DVD, and other removable media labeling standards;
        g.     Email storage conventions (i.e., limitations on mailbox sizes/storage locations, schedule and logs for storage, etc.);
        h.     Software and hardware upgrades (including patches) for the last three years (who and what organization conducted such upgrades); and
        i.     Personal or home computer usage for work-related activities.

**RESPONSE: Duke objects to Request Number 11 on grounds it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims and defenses in this matter and is not proportional to the needs of this single-plaintiff case. Plaintiff's request seeks documents that contain confidential and proprietary**

information that would provide more knowledge of operations than needed about areas and operations outside the scope of Plaintiff's employment and which poses significant risk to Duke.

**Duke further responds and objects to the specific subparts as follows:**

a. <u>Backup tape rotation schedules</u>: **Duke objects to this request on grounds it is overly broad, vague and ambiguous as the type of data being sought is unclear and, thus, Duke is unable to identify whether any "back up tape" would potentially exist or would be relevant to Plaintiff's claims in this action.**

b. <u>Electronic data retention, preservation and destruction schedules</u>: **Duke objects to this request overly broad and would encompass information not relevant to Plaintiff's claims (e.g. medical records retention, research data retention, student records retention). Without waiving these objections, Duke states that subject to an employee setting rules in their Outlook mailboxes, emails that are not deleted are retained. Emails that are deleted are recoverable for an additional thirty days before they roll off. Duke further states that a separated employee's email is recoverable for thirty days after their departure.**

c. <u>Employee use policies of company computers, data, and other technology</u>: **Duke objects to this request on grounds it is vague and ambiguous in that "other technology" is undefined. Duke further objects on grounds this request seeks information that is not relevant to Plaintiff's claims to the extent it implicates use policies related to various types of data including student data, patient data, research data and the like that would not be relevant to the claims or defenses.**

   **Without waiving these objections, Duke refers Plaintiff to its Secure System Usage Policy which will be produced.**

d. <u>File naming conventions and standards</u>: **Duke objects to this request on grounds it is overly broad, unduly burdensome and seeks information that is not relevant to the claims or defenses in this action to the extent it seeks IT security protocols for naming reports or logs.**

   **Without waiving these objections, Duke is not aware of any user file naming conventions with respect to personal files created by employees in the Department of Anesthesiology.**

e. <u>Password, encryption and other security protocols</u>: **Duke objects to this request on grounds it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims or defenses in this action to the extent is seeks IT security protocols that are in place and not generally known to employees.**

Without waiving these objections, Duke refers plaintiff to its Secure System Usage Policy applicable to Plaintiff's position and department which will be produced.

f. Diskette, CD, DVD, and other removable media labeling standards: Duke objects to this request on grounds it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims or defenses in this action to the extent it seeks IT security labeling protocols, research labeling protocols, or other records labeling protocols.

Without waiving these objections, Duke is not aware of any user labeling conventions applicable to removable media created by employees in the Department of Anesthesiology.

g. Email storage conventions (i.e., limitations on mailbox sizes/storage locations, schedule and logs for storage, etc.): In response to this request, Duke states that it utilizes Office 365 and, unless specifically exported, email is not stored locally.

h. Software and hardware upgrades (including patches) for the last three years (who and what organization conducted such upgrades): Duke objects to this request on grounds it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims or defenses in this action. Specifically, this request seeks information related to patching and upgrades which information could be utilized to expose weaknesses or vulnerabilities posing significant risk to Duke and as such is not proportional to the needs of this case.

i. Personal or home computer usage for work-related activities: Duke refers Plaintiff to its Secure System Usage Policy applicable to Plaintiff's position and department which will be produced.

Without waiving the foregoing objections, Duke refers Plaintiff to the current Secure System Usage Memo ("SSUM") as well as the versions of the SSUM pages related to passwords, mobile devices, electronic communications, physical security, security incidents, and email that were in effect November 2016. The 2016 documents have the revisions from any time prior reflected in redline as this is how the old versions are saved. Duke further refers Plaintiff to the Confidentiality Agreement which will be produced.

SUPPLEMENTAL RESPONSE: Duke refers Plaintiff responsive documents Bates numbered DEF 194 - 211.

12. All documents evidencing student feedback provided to Dr. Shaughnessy for the 2014-2015, 2015-2016, and 2016-2017 fiscal years.

RESPONSE: Duke refers Plaintiff to his resident evaluations for the timeframe requested which will be produced.

**SECOND SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to Documents Bates numbered DEFS 8513 – 8909.**

13. All documents reflecting the relationship between Duke and PDC in effect at any time during the 2015-2016 and 2016-2017 fiscal years, including but not limited to memoranda of understanding, inter-corporate agreements, contracts, and documents reflecting inter-corporate meetings between the two entities.

    **RESPONSE: Duke objects to Request Number 13 on grounds it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and/or other applicable privileges. Duke further objects to this request on grounds it is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it is seeking memoranda, contracts, and agreements spanning a two-year period which would include hundreds of documents that have no bearing on Plaintiff's former department or employment. Duke further objects on grounds that this request is vague and ambiguous with respect to the phrase "documents reflecting inter-corporate meetings" which is undefined.**

    **Without waiving these objections, Duke will produce the agreement between Duke and the PDC dated September 29, 1972, the 5(b) memo dated October 12, 1976, and the 2015 Amended and Restated Memorandum of Understanding.**

    **SUPPLEMENTAL RESPONSE:  Duke refers Plaintiff to the 1972 Agreement, 5(b0 memo, and 2015 Amended and Restated MOU Bates numbered DEF 6613-6634.**

14. Any and all documents generated, sent, recorded, or received by Drs. Jeffrey Gadsden, Joseph Mathew, Gavin Martin, Edward Sanders, Holly Muir, Cheryl Jones, and Plaintiff, using email, text message, any social media messenger, or other forms of electronically stored information ("ESI") between January 1, 2016 and June 1, 2018, which references or relates to Dr. Shaughnessy.

    **RESPONSE: Duke objects to Request Number 14 on grounds it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims or defenses in this action as it seeks production of all communications between the purported custodians which "references or relates to Dr. Shaughnessy" without respect to whether the communications relate to Dr. Shaughnessy's claims or Defendants' defenses and seeks communications for a one-year period beyond the end of Plaintiff's employment.  Duke further objects to this request as overly broad, unduly burdensome, and seeks production which is not relevant to the claims or defenses in this action with respect to purported custodian Cheryl Jones – a colleague in a non-managerial role who is not alleged to have taken any actions with respect to Plaintiff's employment, is a non-party to this action, is no longer employed by Duke, and whose email was not subject to a litigation hold when she departed Duke in 2016 at which time her NetID was decommissioned.**

Without waiving the foregoing objections, Duke will produce responsive documents that are located through an ESI search using valid, agreed search terms that are not subject to any privilege or immunity from relevant custodians.

15. For each Interrogatory set forth in Plaintiff's Interrogatories, and for each Request for Admission set forth in Plaintiff's Requests for Admission, produce all documents which Defendant referred to, relied upon, consulted or used in any way in answering such Interrogatory or Request for Admission.

RESPONSE: Duke objects to Request Number 15 to the extent it seeks documents protected from disclosure by the attorney-client privilege or work-product doctrine.

Without waiving the foregoing objections, Duke refers Plaintiff to non-privileged documents which will be produced in response to Plaintiff's other requests.

16. All documents that contain or otherwise relate to the facts or information that Defendant contends refute, or relate to in any way, the allegations contained in Plaintiff's Complaint, including all documents identified in Defendant's Rule 26(a)(1) initial disclosures, and any amendments or supplements thereto.

RESPONSE: Duke objects to Request Number 16 on grounds it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, or other applicable privileges. Duke further objects to this request on grounds it is overly broad and unduly burdensome to the extent it seeks production of "all documents" that "relate to in any way" the allegations of Plaintiff's complaint, which could encompass documents that are marginally or tangentially related to Plaintiff's allegations.

Without waiving these objections, Duke refers Plaintiff to versions of the Duke Faculty Handbook during Plaintiff's employment (including the non-discrimination and harassment policies therein), the EEOC investigative file produced in response to Request Number 20, Plaintiff's correspondence with Office for Institutional Equity Assistant Vice President Cynthia Clinton, Dr. Martin and Dr. Gadsden's files produced in response to Request Number 1, teaching scores and feedback produced in response to Request Numbers 9 and 12, Plaintiff's department file produced in response to Request Number 1, and Duke's insurance declarations page which will be produced.

SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to Duke Faculty Handbooks Bates numbered DEF 211-6271, the EEOC investigative file Bates numbered 6272-6503, Plaintiff's department file Bates numbered DEF 29-193 (inclusive of Dr. Martin's File Bates numbered DEF 106-193 and Dr. Gadsden's note to file Bates numbered DEF 103 – 105).

**SECOND SUPPLEMENTAL RESPONSE: Under Rule 33(d) of the Federal Rules of Civil Procedure, Duke further refers Plaintiff to Cynthia Clinton's correspondence Bates numbered DEF 6897 - 6899, Gavin Martin's file Bates numbered 6900 -7027, and Jeff Gadsden's file Bates numbered 6884 - 6896).**

17.  All reports, including drafts, submitted by any expert witness or potential expert witness retained or consulted by Defendant with respect to the issues raised in Plaintiff's Complaint.

**RESPONSE: Duke is not in possession of documents responsive to this request.**

18.  All notes, diaries, calendars, logs prepared by or on behalf of Drs. Mathew, Martin, or Gadsden between August 1, 2016 and January 7, 2017.

**RESPONSE: Duke objects to Request Number 18 on grounds it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims or defenses in this action to the extent it calls for documents, including personal calendars and diaries of individuals without regard as to subject matter or relation to Plaintiff, his claims, or Duke's defenses.**

**Without waiving the foregoing objections, Duke states that calendar entries or notes which are located through an ESI search using valid, agreed search terms that are not subject to any privilege or immunity from relevant custodians will be produced. Duke further states that is not aware of diaries or logs that would be responsive to this request.**

19.  Any written or recorded statements of Dr. Joseph Mathew, Dr. Gavin Martin, or Dr. Jeffrey Gadsden taken for the purpose of providing testimony in any hearing, investigation, or trial in the four (4) years preceding the date of this writing, including transcripts of deposition(s) taken in the course of the litigation of *Seaman v. Duke Univ., et al., 1:15-CV-00462,* statements made before any FHC hearing, or statements made for any other litigation, arbitration, tribunal, or before any governmental agency.

**RESPONSE: Duke objects to Request Number 19 on grounds it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims or defenses in this action. Specifically, this request seeks information related to legal matters and disputes without regard to relevance to this action.**

**Without waiving the foregoing objections, Duke refers Plaintiff to the Faculty Hearing Committee Hearing recording for his grievance which will be produced.**

**SUPPLEMENTAL RESPONSE: Duke refers Plaintiff to the Faculty Hearing Committee recording Bates numbered DEF 6607 (native).**

20.  All documents submitted to or received by Defendant in the course of the EEOC process preceding this lawsuit.

**RESPONSE:** Duke objects to Request Number 20 on grounds it seeks information protected from disclosure by the attorney-client privilege or attorney work-product doctrine.

Without waiving the foregoing objections, Duke refers Plaintiff to the EEOC investigative file received pursuant to a FOIA request which contains Duke's response to Plaintiff's Charge allegations which will be produced.

**SUPPLEMENTAL RESPONSE:** Duke refers Plaintiff to the EEOC Investigative File Bates numbered 6272 -6503.

21. Any and all documents referencing or relating to the enactment, study, review, amendment, or repeal of Pages C-8 through C-10 of Appendix C of the DFH, attached hereto as Exhibit A, from November 1, 1990 until the date of this writing, including any drafts, records, meeting minutes, notes, or other correspondence.

    **RESPONSE:** Duke objects to Request Number 21 on grounds it is overly broad unduly burdensome, not proportional to the needs of this case, and seeks information that is not relevant because it is undisputed that the recommendations contained the "Report of the Ad Hoc Committee on Procedures for Appointments, Reappointments, and Promotions for Regular, Non-Tenure Track Faculty", Duke Faculty Handbook Appendix C7-C10, was in the versions of the Duke Faculty Handbook in effect during Plaintiff's employment. Further this request seeks "all documents referencing or relating to . . . drafts, records, meeting minutes, note or other correspondence" from unidentified custodians spanning a nearly 30-year period, 20-years of which pre-date Plaintiff's employment.

    Without waiving the foregoing, Duke refers Plaintiff to documents which will be produced in response to Request Number 24.

22. Any and all documents evidencing or describing the annual review process carried out for the purpose of reviewing Dr. Shaughnessy's employment in all prior years.

    **RESPONSE:** Duke refers Plaintiff to his department file produced in response to Request Number 1.

23. Any and all documents reflecting any allegations of sex discrimination, disability discrimination, breach of contract, or retaliation alleged by any Duke employee against Dr. Mathew, Dr. Gavin Martin, or Dr. Jeff Gadsden at any time in the last five (5) years, including demand letter(s), EEOC Charge(s), written complaints, records of oral complaints, records of investigations undertaken by Defendant's human resources, if any.

    **RESPONSE: Aside from Plaintiff, Duke is not aware of documents responsive to this request.**

24.     Any and all documents relating to Dr. Shaughnessy's complaint and/or appeal of the decision not to reappoint his contract, including but not limited to FHC documents, statements, transcripts, audio/video recordings, and any correspondence between members of Duke's administration.

**RESPONSE: Duke objects to Request Number 24 on grounds it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, or other applicable privileges including the peer review privilege. Duke further objects to this request to the extent it seeks "any and all documents" relating to multiple events and "any correspondence between members of Duke's administration."**

**Without waiving the foregoing objections, Duke, under Rule 33(d) of the Federal Rules of Civil Procedure, refers Plaintiff to Ann Brown's file, FHC Chair Thomas Metzloff's electronic files, and responsive documents that are located through an ESI search using valid, agreed search terms that are not subject to any privilege or immunity from relevant custodians.**

**SUPPLEMENTAL RESPONSE:  Duke refers Plaintiff to Ann Brown's Paper file Bates numbered DEF 6504 – 6606 and the Faculty Hearing Committee Recording Bates numbered DEF 6607 (native).**

**SECOND SUPPLEMENTAL RESPONSE: Under Rule 33(d) of the Federal Rules of Civil Procedure, Duke refers Plaintiff to Ann Brown's computer file Bates numbered DEF 6675 – 6789, President Price appeal notebook Bates numbered DEF 7029 - 7354, and Professor Metzloff's files Bates numbered DEF 7355 - 8512).**

Dated this the 9th day of August, 2019.

Robert A. Sar (N.C.  Bar No. 22306)
Kimberly J. Lehman (N.C. Bar No. 43001)
4208 Six Forks Road, Ste. 1100
Raleigh, North Carolina 27622
Telephone: 919.787.9700
Facsimile: 919.783.9412
Email: bob.sar@ogletree.com
E-mail: kimberly.lehman@ogletree.com
*Attorneys for Defendant Duke University*

CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served the foregoing **Defendant Duke University's SECOND SUPPLEMENTAL Responses to Plaintiff's First Set of Requests for Admission, Interrogatories and Requests for Production** via United States Mail, first-class, postage prepaid, upon the following:

Michael A. Kornbluth
Andrew J. Henson
Kornbluth Ginsberg Law Group, P.A.
3100 Tower Blvd., Suite 800
Durham, NC 27707
*Attorneys for Plaintiff Michael Shaughnessy*

John A. Zaloom
Moore & Van Allen PLLC
100 North Tryon Street
Suite 4700
Charlotte, NC 28202
*Attorneys for Defendant Private Diagnostic Clinic, PLLC*

This the 9th day of August, 2019.

Robert A. Sar (N.C. Bar No. 22306)
Kimberly J. Lehman (N.C. Bar No. 43001)
4208 Six Forks Road, Ste. 1100
Raleigh, North Carolina 27622
Telephone: 919.787.9700
Facsimile: 919.783.9412
Email: bob.sar@ogletree.com
E-mail: kimberly.lehman@ogletree.com
*Attorneys for Defendant Duke University*

39499790.1