August 2, 2019

**VIA US MAIL & E-MAIL:**

Kimberly Lehman
Robert Sar
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27622
Email: kimberly.lehman@odnss.com
Email: bob.sar@odnss.com

John A. Zaloom
Moore & Van Allen, PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Email: johnzaloom@mvalaw.com

**Re:**   **Final Statement of Parties' Positions on ESI Search Terms**

Dear Ms. Lehman, Mr. Zaloom:

After our discussion on July 26, 2019, I wished to emphasize Plaintiff's concerns that it is not the *quantity,* but the *quality* that is lacking in the scope of Defendants' proposed ESI terms. Specifically, the Defendants' terms omit critical discovery needs of the Plaintiff in the following areas:

- Critical ESI is omitted from the period between the protected activity and the adverse employment action in question regarding the three individuals Duke has identified as the decision-makers in Plaintiff's non-renewal; and

- Defendants have not allowed for effective searches regarding the events involving Dr. Kassik and Dr. Jones, who are at the center of Plaintiff's engagement in protected activity. Defendants have only agreed to search limited terms as a subset of documents featuring Plaintiff's own name.

Since May of this year, we have exchanged no fewer than six letters on this topic and have held numerous teleconferences. Plaintiff has continued to make significant concessions at each iteration of discussion (including in the present document), but is unable to make further departures that would deny him discovery that is vital to the prosecution of his claims and is well established under the discovery rules. Accordingly, please consider this a final attempt at resolution without the Court's intervention. If Defendants are unable to agree to these requests, Plaintiff asks that the parties submit to the expedited discovery resolution procedures under L.R. 37.1(b).

1

Case 1:18-cv-00461-CCE-JEP   Document 59-4   Filed 08/10/19   Page 1 of 8

DISCUSSION

## A. Defendants Have Refused to Search Dr. Shaughnessy's Own Surname as a Standalone Term for the Admitted Decision-Makers.

It should go without saying that the Plaintiff's own surname is a valid search term for the custodians that Duke alleges decided not to renew his contract (*i.e.*, Drs. Mathew, Martin, and Gadsden). Yet, in spite of this, in Defendants' July 19, 2019 Letter and our telephone discussion on July 26, 2019, Defendants have not agreed to search the term "Shaughnessy" as a standalone search for those three individuals of greatest importance in this litigation.

Defendants' position on this issue is difficult to understand. On our July 26, 2019 conference call, Defense Counsel conceded that the surname "Shaughnessy" is distinctive and unlikely to produce false positives. Defendants have also admitted that they have not yet run the search terms and thus have been unable to represent how this search would pose an undue burden in discovery. Moreover, Defendants agreed to the "Shaughnessy" standalone term for other custodians of decidedly lesser importance, including Ann Brown, Nancy Andrews, and Nan Jokerst.

Instead, under the Defendants' proposed search terms, "Shaughnessy" hits will only be produced from these critical decision-makers when the hit occurs in conjunction with other agreed-upon terms. Thus, under Defendants' proposed search, a hypothetical comment that "*Something needs to be done about Shaughnessy*" would <u>not</u> be responsive if written by Dr. Martin (an admitted decision-maker), but *would* be responsive by Nan Jokerst, a witness much further removed from the heart of this matter (and much less likely to make such a comment). There is no reason to curtail the ESI search of the decision-maker custodians in this fashion; such a truncated search carries a high likelihood of omitting critical communications by these decision-makers that would demonstrate their state of mind in deciding to nonrenew Dr. Shaughnessy, *inter alia.*

To be clear, Plaintiff agrees that for the period of time leading up to Plaintiff's protected activity (October 2016) the term "Shaughnessy" *should* be searched in conjunction with the other agreed-upon terms to filter out ordinary, business-related usages of his surname occurring prior to the events giving rise to this lawsuit. However, following Plaintiff's protected activity, there is no reason to restrict the search.

Plaintiff's request that the "Shaughnessy" term be included as a standalone term for the three decision-makers falls plainly within the permissible ambit of discovery in employment discrimination cases. Courts have repeatedly recognized that because of the often indirect and circumstantial nature of the proof in such cases, undue restrictions on discovery are not permitted. *See Smith v. Bayer Mat. Sci., LLC*, 2013 WL 3153467, at *4 (N.D.W.Va. June 19, 2013) ("In employment discrimination cases, courts have consistently held that discovery is even broader than that enjoyed in regular civil litigation, and that 'the imposition of unnecessary limitation on discovery is especially to be avoided in Title VII cases,' because of the nature of proofs required to demonstrates unlawful discrimination may often be indirect or circumstantial."); *Ardrey v. United Parcel Service*, 798 F.2d 679, 684 (4th Cir. 1986) ("[U]ndue

2

restrictions of discovery in Title VII cases are 'especially frowned upon.'"); *EEOC v. Altec Indus., Inc.*, 2012 WL 2295621, at *1-2 (W.D.N.C. Jun. 18, 2012) ("[U]ndue restrictions of discovery in Title VII cases are especially frowned upon[.]"); *Lovett v. Cracker Barrell Old Country Store, Inc.*, 2015 WL 4092801 (E.D.N.C. Jul. 7, 2015) (same).

Please reconsider Defendants position on this matter of central importance to the litigation.

**B. Plaintiff Requests Communications Between the Decision-Makers During the Period Between Plaintiff's Protected Activity and His January 17, 2017 Appeal After Nonrenewal**

As stated above, Plaintiff has requested the communications between the three decision-makers beginning at the moment of Plaintiff's protected activity (October 17, 2016) and ending on the date Plaintiff requested Dr. Mathew's reconsideration of his nonrenewal (January 17, 2017). This is a narrow request that is limited by the following factors:

- It is narrowly tailored to those persons who Duke alleges *made* the nonrenewal decision in question;
- It is narrowly tailored in time to the period between the protected activity and Plaintiff's appeal for reconsideration shortly after the nonrenewal decision; and
- It is further limited by Plaintiff's agreement to omit otherwise responsive communications sent to more than 5 recipients (so that the document production focuses on the state of mind expressed between the decision-makers in question).

This request seeks documents demonstrating the furtive communications designed to conceal the retaliatory motivations for which Plaintiff has instigated the present action and would be vital evidence of pretext.[1] *See, Jhirad v. TD Securities USA, Inc.*, 2003 WL 1872654 (S.D.N.Y. Apr. 10, 2003) ("[E]mployers rarely leave a paper trail – or "smoking gun" – attesting to a discriminatory intent[.]") (citation omitted); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464-5 (2d. Cir. 1989) ("'Employers are rarely so cooperative as to include a notation in the personnel file' that the firing is for a reason expressly forbidden by law.") (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 638 (5th Cir. 1985)); *Townsend v. United States*, 236 F.Supp.3d 280, 302 (D.D.C. 2017) ("The Court is cognizant of the 'elusive' nature of intentional discrimination . . . and that clever men may easily conceal their motivations.") (citations omitted).

The documents Plaintiff seeks are those wherein the decision-makers themselves were likely clever enough not to use a keyword like "discrimination" and may even have omitted mention of Shaughnessy's name, but for which the context of the communication (given its

---

[1] "[Dr]. Mathew is not happy with Mike for his comments at the divisional meeting." This hypothetical statement exchanged between Drs. Martin and Dr. Gadsden on, say, November 10, 2016, would not fall within the Defendants' proposed search, but would be of obvious relevance and significance in this litigation. Alternatively, a hypothetical statement to the effect of: "I'll pull Mike's file" exchanged between Drs. Mathew and Martin subsequent to the divisional meeting on October 17, 2016 would also not be produced under Defendants' proposed search, but would be similarly of great relevance and probative value.

3

occurrence within a critical timeline in this case) demonstrates a high likelihood of referring to Dr. Shaughnessy's protected activity.[2] Plaintiff's Cohorts 2 and 3 requests the following:

**Pl. Search Cohort No. 2:** From October 17, 2016 to January 17, 2017, all messages to and from custodian **Gavin Martin** and the following custodians:

- o **Joseph Mathew**
- o **Jeffrey Gadsden**

**(parameters excluding emails sent to more than 5 recipients)**

**Pl. Search Cohort No. 3:** From October 17, 2016 to January 17, 2017, all messages to and from custodian **Joseph Mathew** and the following custodians:

- • **Jeffrey Gadsden**

**(parameters excluding emails sent to more than 5 recipients)**

Proposed Final Accommodation: If Defendants are not willing to agree to the production of all communications between the decision-makers during the three-month period, Plaintiff proposes instead that the production encompass:

- • All hits for "Mike" and "Michael" during the three-month period are produced from these custodians; and
- • All communications between the identified custodians occurring during the period of November 7, 2016- December 9, 2016, and January 3, 2017 – January 17, 2017.

This accommodation is in addition to, and not in substitution for, the other agreed-upon search cohorts). Please reconsider Defendants position on this matter of central importance to the litigation.

## C. **Defendants Have Denied ESI Discovery of Critical Events Underlying Plaintiff's Protected Activity**

Defendants have denied Plaintiff's ability to conduct discovery regarding the very discriminatory events that Plaintiff complained about in his claim of retaliation. Namely, Plaintiff's allegations regarding the besmirching of Dr. Kassik's name by attributing her death as arising from a drug problem and the physically threatening behavior exhibited by Dr. Aronson in his confrontation of Dr. Cheryl Jones, who was herself a person with a disability and was at that time acting out of a deep concern that the Department, specifically Dr. Mathew, was engaging in extremely insensitive behavior respecting Dr. Kassik's death. These allegations are amply stated

---

[2] For example, a hypothetical text message sent by Dr. Martin to Dr. Gadsden immediately following the nonrenewal meeting on January 6, 2017, stating: "I really don't feel comfortable with what I'm being asked to do." This would be of high probative value, but would not be produced without Plaintiff's Search Cohorts 2 and 3.

4

in Plaintiff's Amended Complaint and are accordingly discoverable. (Am. Compl. ¶¶ 40-49); *see also Armitage v. Biogen, Inc.*, 2019 WL 79037 (M.D.N.C. Jan. 2, 2019) ("A plaintiff's allegations 'define the extent of [his] claims in [a] case, and, therefore, the appropriate scope of discovery."). Moreover, Drs. Jones and Kassik were both persons with disabilities within the Department and discovery of those instances is relevant to Plaintiff's own claim of disability discrimination. "Evidence of general patterns of discriminatory treatment by an employer is relevant even in the individual disparate treatment case." *Lovett v. Cracker Barrel Old Country Store, Inc.*, 2015 WL 4092801 (E.D.N.C. July 5, 2015) (quoting *Smith v. Bayer Mat. Sci., LLC*, 2013 WL 3153467, at *5 (N.D.W.Va. June 19, 2013).

Nonetheless, Defendants have limited discovery regarding the Dr. Jones and Dr. Kassik events to the following searches, which are contingent upon a "hit" on Dr. Shaughnessy's own name:

---

**Defendant's Proposed Search Cohort No. 2B:**
- Custodians: Joseph Mathew, Gavin Martin, Jeffrey Gadsden, Holly Muir.
- Period: 6/1/2016 – 6/30/2017
- Terms:
  - (Michael or Mike or Shaughnessy) AND
    - "Cheryl Jones" or
    - Aronson

    **(parameters excluding emails sent to more than 5 recipients)**

  - (Michael or Mike or Shaughnessy) AND
    - Wible or
    - Kassik

---

Defendants' search parameters only cover instances relating to Drs. Kassik, Jones, and Aronson as a subset of Plaintiff's own name. Plaintiff believes this to be an inappropriately limited scope of discovery for such a critical event in his claims. In lieu of the above, Plaintiff asks Defendants' acquiescence to the following terms, which, in the interest of compromise, have been further narrowed:

5

- **Pl. Search Cohort No. 7: (Events Underlying Plaintiff's Protected Activity)**
  - Custodians: Joseph Mathew, Gavin Martin, ~~Jeffrey Gadsden,~~ Ann Brown, Holly Muir.
  - Period: 6/1/2016 –6/30/2017
  - Terms:
    - "Pamela Wible" or "Dr. Wible" or
    - ~~Shaughnessy w/ 25~~ (Struck for redundancy)
      - ~~Concern* or~~
      - ~~Kassik or~~
      - ~~meeting~~
    - Cheryl or "Dr. Jones" w/20
      - Resident or
      - Suicide or
      - Incident or
      - Sol or
      - Aronson or (Added in lieu of including Dr. Aronson as a custodian)
      - Kassik or
      - Complain* or
      - ~~Wible or~~
      - FDA or
      - Book* or
      - "Mental illness" or
      - ~~cause or~~
      - ~~renew* or~~
      - nonrenew* or
      - non-renew* or
      - ~~FHC or~~
      - ~~"faculty hearing committee" or~~
      - professional* or
      - unprofessional* or
      - terminat* or
      - leave or
      - expir* or
      - ~~Kredich or~~
      - Shaughnessy or
      - Violat* or
      - ~~AAUP or~~
      - disabilit* or

6

- accommodat* or
- mental* or
- psych* or
- retaliat* or
- harass* or
- hostil* or
- safety or
- rude or
- abrupt or
- "come back" or
- "coming back" or
- criticiz* or
- behavior or
- grievance* or
- discriminat* or
- counsel*
- Suicid*
- Kassik

## D. Plaintiff's Final Compromises in ESI Search Parameters

To focus discovery on the most important matters in this case, Plaintiff will make the following further concessions: (1) Plaintiff will not seek further custodians: Plaintiff will not seek to add Annmarie Thompson, Sol Aronson, or Sally Kornbluth as custodians; (2) Plaintiff has further winnowed down the requests for discovery described above; and (3) Plaintiff will not seek the resident evaluations search list previously requested.

## I. Plaintiff Repeats Its Request That Defendants Adhere to the Stipulated ESI Protocol and Utilize the Expedited Resolution Procedures of Local Rule 37.1(b).

You will recall that the parties' ESI Search Protocol provides in Section 4(a) that in the event that the parties are unable to reach agreement, they will proceed to the Court in the following manner:

> If the parties are unable to resolve disputes over search terms through the meet and confer process, the parties will submit the dispute to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with the search terms in dispute. The parties agree to utilize the expedited resolution procedures of Local Rule 37.1(b), if possible.

7

On our July 26, 2019 teleconference, Defense Counsel stated that would not agree to utilize the expedited resolution process despite of the parties' agreement under the ESI protocol. Accordingly, please advise why Defendants believe it is not "possible" to follow the protocol. Plaintiff's Counsel strongly believes that this procedure is not only possible, but will be most effective in quickly resolving this dispute.

## CONCLUSION

In conclusion, I hope that you will reconsider Defendants' positions on ESI discovery in light of the above. If this is not possible, please let me know as quickly as practicable so that the parties may put this matter before the Court and not further draw out this very lengthy process. With kind regards, I am,

Andrew J. Henson