August 7, 2019

**Via E-mail Only**
Michael Kornbluth (mkornbluth@KGLAWNC.COM)
Andrew Henson (ahenson@KGLAWNC.COM)

Re:  Michael Shaughnessy v. Duke University et al.
     Middle District of North Carolina; Case No. 1:18-cv-00461

Dear Mr. Henson:

We write in response to your letter of August 2, 2019 titled "Final Statement of Parties' Positions on ESI Search Terms." To be clear, your letter reflects Plaintiff's position and does not accurately reflect the reasonable scope of ESI agreed to by Defendants. Nor does your letter accurately reflect the negotiations and discussions between the parties. Setting that aside, we will respond briefly to some of the key points.

### I.  Expedited discovery resolution procedures under Local Rule 37.1(b) would not be efficient or promote judicial economy under the circumstances

We do not believe the expedited discovery resolution procedures of Local Rule 37.1(b) would be efficient or promote judicial economy under the circumstances. Based on the meet and confer telephone conference regarding Duke's written discovery responses and objections, court intervention will be necessary on issues intertwined or overlapping with those presented in your letter regarding ESI. Further, you have indicated that you will respond to Defendants' respective Rule 37 letters of July 29 and 30 this Friday, August 9. However, based on prior correspondence about your intent to withhold audio recordings of conversations between Plaintiff and two of the decision-makers for "impeachment" purposes, that issue will also likely need to be adjudicated by the court soon. We believe that it will be more efficient and promote judicial economy to present these issues to the court at one time. To avoid this causing delay, Defendants are processing cohort 1 and 2. Please let us know if we can go ahead and start Defendants' cohorts 3 and 4 as set forth in Defendants' July 19, 2019 post-telephone call (i.e. can we interpret your letter's omission of these cohorts for discussion as agreement).

An additional (and related) point of concern is that the parties have not yet discussed searches of text messages. Parameters need to be set to limit unnecessary intrusion into these individuals' conversations with persons uninvolved with this matter, including family members and others. We believe that these searches should be limited to communications between or among any of the custodians and/or Plaintiff – *i.e.*, for each custodian, text messages should be gathered for searching if the recipients of the message include any of the other text message custodians or Plaintiff. This will avoid any private (family or friend) conversations being subject to review, including conversations, hypothetically, about a friend or family member with depression, which could be returned by the search term search if the collection is not limited by recipients.

## II. Defendants have agreed to search terms and custodians that will effectively allow for efficient and targeted discovery on the key issues in this case

Your letter implies that Plaintiff has made significant concessions throughout this process. However, the first true concessions were not made until our call of July 19. Prior to that, Plaintiff's proposals were conditioned on Defendants' acquiescence to unrelated and unacceptable proposals (including agreement to Duke's in-house counsel as a custodian). But we appreciate the recent concessions, including the new elimination of Thompson, Aronson, and Kornbluth as custodians and agree that this is appropriate.

### A. Defendants have agreed to extensive searches aimed at producing relevant documents from the decision-makers

Your letter purports to advocate for "quality" over "quantity," but Plaintiff's proposals seek the opposite. Instead of targeted search terms aimed at finding relevant correspondence, Plaintiff proposes: (1) adding "Shaughnessy" as a standalone term for custodians Mathew, Martin, and Gadsden who, as his supervisors, would be expected to have routine correspondence with Shaughnessy; and (2) *all communications* between decision-makers for a roughly 6-week timespan regardless of whether this correspondence relates to Plaintiff's claims. Plaintiff bases these proposals on an apparent conspiracy theory that the decision-makers "were likely clever enough not to use a key word like discrimination." This misses the mark and underscores the unreasonableness of Plaintiff's position. Defendants have agreed to a liberal search of email with extensive search terms likely to produce responsive documents. Plaintiff proposes a fishing expedition. Defendants have agreed to:

- Cohort 1: All email communications over an 18-month period between Plaintiff and the decision-makers Mathew, Martin, and Gadsden along with the community division decision-maker, Eddie Sanders, and also Holly Muir.

- Cohort 2: The same key custodians in Cohort 1 and proximity searches of Mike or Michael or Shaughnessy with more than 80 search terms and additional searches of more than 15 terms aimed at returning communications that would reflect performance issues of Plaintiff and his colleagues.

Contrary to Plaintiff's assertion, this is not a search that is likely only to return documents utilizing the term "discrimination" or the like. Defendants have been entirely reasonable in seeking to provide a productive and efficient email search.

Defendants agreed to the standalone search term "Shaughnessy" with custodians who had limited interaction with Plaintiff, not daily routine interactions with Plaintiff. This is an apples and oranges comparison.

Defendants are confused by Plaintiff's new additional search proposal using the name "Mike" or "Michael" (a decidedly not unique name) during a three-month timespan from October 17, 2016 to January 17, 2017 and again a six-week period of all communications between decision makers which Plaintiff calls a "final accommodation." Defendants do not view this an accommodation.

However, Defendants would compromise. While we have genuine concerns that Plaintiff's proposal of "Shaughnessy" as a standalone term will return a significant number of non-responsive documents, we are willing to test the term as outlined below:

- Custodians: Mathew, Martin, and Gadsden
- Period: October 17, 2016 – January 17, 2017
- Term: "Shaughnessy"

(parameters excluding emails sent to more than 5 recipients).

This is not an indication that Defendants believe the standalone term "Shaughnessy" is appropriate, but an effort to avoid the need for court intervention on this issue.

### B. Defendants have agreed to appropriate search terms targeting documents relevant to Plaintiff's retaliation claim

As the parties have discussed, both regarding ESI and Plaintiff's written discovery requests, Defendants believe that the only relevance of Dr. Kassik's suicide and Cheryl Jones' interaction with non-decision-maker Sol Aronson concerns (1) what Plaintiff knew or believed and (2) what actions or statements Plaintiff took or made based on his knowledge or belief that were known to the decision-makers. These are the items at issue concerning Plaintiff's alleged protected activity that he argues supports his retaliation claim. Defendants have proposed search terms that would target such communications concerning or related to Plaintiff. Defendants agreed to reasonable proximity searches of terms including: depress*, accommodate*, mental*, complain*, resident, suicide*, discriminat*. Defendants further agreed to the following targeted searches:

- **Proposed Search Cohort No. 2B:**
    - Custodians: Joseph Mathew, Gavin Martin, Jeffrey Gadsden, Holly Muir.
    - Period: 6/1/2016 – 6/30/2017
    - Terms:
        - (Michael or Mike or Shaughnessy) AND
            - "Cheryl Jones" or
            - Aronson

**(parameters excluding emails sent to more than 5 recipients)**

- (Michael or Mike or Shaughnessy) AND
    - Wible

Plaintiff, however, is seeking to delve into sensitive details surrounding former colleagues who are not parties to this matter and seeks correspondence well beyond what is necessary to establish his claims. If there are some additional terms that you would like to propose adding to the proximity search (Mike or Michael or Shaughnessy), Defendants would be open to discussion about that.

In closing, the parties are set to confer on Tuesday, August 13, 2019 regarding Plaintiff's discovery responses. We would request that the scope of text message searches also be addressed at that time.

Best regards,

Kim Lehman
Counsel for Duke University

John Zaloom
Counsel for the PDC