# Ogletree
# Deakins

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*Attorneys at Law*

4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
Telephone: 919.787.9700
Facsimile: 919.783.9412
www.ogletree.com

Kimberly J. Lehman
919.787.9700
kimberly.lehman@ogletree.com

July 25, 2019

Via U.S. Mail and Email

Michael A. Kornbluth, Esq.
Andrew J. Henson, Esq.
Kornbluth Ginsberg Law Group
3100 Tower Blvd., Suite 800
Durham, NC 27707

Re: **Michael Shaughnessy v. Duke University et al.**
**Middle District of North Carolina; Case No. 1:18-cv-00461-CCE-JEP**

Dear Mr. Henson:

I write on behalf of Defendant Duke University ("Duke") in response to your July 13, 2019 letter regarding Duke's responses to Plaintiff's first set of requests for admission, interrogatories, and requests for production ("the Letter").

The Letter details perceived deficiencies with Duke's objections and responses. However, the Letter makes clear that many of Plaintiff's issues are not with Duke's responses, but with Plaintiff's overbroad requests which seek information that is neither relevant nor proportional. The Letter repeatedly asserts that Duke's responses are incomplete because the responses lack the specific details Plaintiff believes should be provided. As detailed in this letter, Duke responded to the Plaintiff's requests as written. With the exception of the responses that Duke has agreed to supplement, Duke provided responses which accurately respond to the discovery requests as written and provide sufficient detail to meet its obligations under the Federal Rules of Civil Procedure.

Throughout the Letter, you state that Duke has not adequately identified documents that have been produced through its descriptions. Duke will supplement no later than Monday, July 29, 2019 with the Bates numbers of the documents that have been produced and are referenced in the responses. But please be advised that I erroneously believed that the production provided for upload to a review platform as the Parties agreed included designations as to which RPD the documents were responsive to which would have provided further clarity. I do apologize for my oversight on this point. Duke will also provide its privilege log for the documents produced.

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville
Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis
Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

Case 1:18-cv-00461-CCE-JEP   Document 59-10   Filed 08/10/19   Page 1 of 8

As you are aware, the Parties have been actively engaged in lengthy good faith negotiations seeking to reach agreement on Plaintiff's proposed ESI protocol and production format as well as ESI custodians and search terms. I state this only to note that I did understand that the electronic files were going to be supplemented with the overall ESI production and that the initial production was the paper documents. Duke will supplement with its non-email electronic files which it is in the process of reviewing including:

- Professor Tom Metzloff's electronic files;
- John Borrelli electronic file;
- Jeff Gadsden electronic file;
- Gavin Martin electronic file (largely duplicative of the paper file produced which will be identified by Bates number as stated above);
- Ann Brown electronic file (paper file already produced);
- Excel Spreadsheet of Anesthesiology Publications (Interrogatory No. 17);
- Plaintiff's resident evaluations (RPD No. 12) and teaching scores with aggregate comparison data (RPD No. 9)
- Notebook of materials provided to President Price

With response to the individual responses identified in your letter, Duke responds as follows:

**Responses to Requests for Admission**:

**RFA No. 1.** While Plaintiff's request identified the 2016-2017 fiscal year, it did not clearly identify the term of Plaintiff's contract making the request unclear as noted in Duke's response. However, Duke will agree to amend is response to state the following:

Duke admits that Plaintiff's reappointment letter (the "Contract") for the 2016-2017 fiscal year established a definite term of employment for Dr. Shaughnessy which expired on June 30, 2017.

**RFA No.7**: Duke is not required to agree to Plaintiff's undefined terms or characterizations stated in the request. The term "discussions" is no more vague than "disputes."

**RFA Nos. 14 and 15**: Duke disagrees with Plaintiff's position and construction of this Request. As Plaintiff knows, the Faculty Hearing Committee examined the history and interpretation of the Ad Hoc Committee recommendations contained in Appendix C during Plaintiff's grievance. The Faculty Hearing Committee noted that the Ad Hoc Committee's recommendations concerned the development of appropriate formal review procedures and did not impose specific procedures required for the School of Medicine (which is the only School relevant to Plaintiff's claims). Further, Plaintiff's request appears to indicate that the recommendations in the Ad Hoc Committee report were adopted and instructed to be implemented as written rather than the deans working to develop appropriate procedures for their schools. Accordingly, Duke objected to Plaintiff's characterization of the Ad Hoc Committee report recommendations as the "Reappointment Review Procedure" as it imposes an incorrect interpretation onto the facts.

**Responses to Request for Production**:

**RPD Nos. 2, 3, 4, 5, and 6**. Plaintiff's request(s) seek production of "the entire personnel file . . . including, but not limited to, the employment benefits, legal and or disciplinary files, to include the file jacket, resumes or applications for employment . . . performance evaluations, documents in relation to attendance, written warnings or reprimands by Defendant, including SRS reports, documentation created in conjunction with Defendant's "Cup of Coffee" system, complaints about or by [subject of request], counseling, and documents of any pre-employment communications by and between [subject of request] and Defendant."

As stated in Duke's initial objections, this request seeks documentation well beyond the scope of a personnel file and which have no bearing on the claims asserted by Plaintiff in this action. The Western District case *Cason v. Builders FirstSource-Southeast Group, Inc.* cited by Plaintiff is, therefore, not applicable to Plaintiff's request as written (Duke will address SRS and "Cup of Coffee" in response to RPDs 7 and 8 below). Plaintiff cannot demonstrate a need for benefits, pay, attendance, resumes, applications, and pre-employment communications identified in Plaintiff's requests as they would provide no insight into Plaintiff's claims of alleged discrimination and retaliation by Drs. Mathew, Martin, and Gadsden. The privacy interests of these individuals weighed against the need for information identified in Plaintiff's Requests squarely falls in favor of Duke's position that this information is not discoverable for these individuals under these circumstances. This is especially true for Requests Numbers 5 & 6 which concern non-party, non-decision makers Dr. Cheryl Jones and Dr. Sol Aronson who are not alleged to have taken any actions with respect to Plaintiff.

Further, regarding Drs. Mathew, Martin, and Gadsden, Duke responded to Plaintiff's Interrogatory Number 14 stating that, other than Plaintiff's contentions, it is not aware of any complaints of sex or disability discrimination or retaliation against these individuals.

**RPD No. 7**. Plaintiff's assertion that Duke's objection stated only the number of physicians as the basis for its burdensome objection is incorrect. Duke's response stated: "reports in the SRS are not able to be generated on the basis of faculty rank or department. A search by physician name -- of which there would be approximately 100-110 regular rank, non-tenure track faculty in the department of anesthesiology for each year requested -- would capture non-responsive reports wherein the individual may have been the generator of the report, listed in the description field as present but whose actions are unrelated to the issue being reported as anesthesiologists are typically present for numerous procedures performed and thus there is no means of culling out false positives." Further, the only relevant SRS reports would be the Professional Conduct SRS reports about employees in the department that were made known to the decision-makers, not every report for employees in the Department of Anesthesiology as Plaintiff contends. To this end, Duke will agree to consider production of this subset of SRS reports and is working to identify documents in this category for review.

**RPD No. 8**. Duke stands on its objection to this request including the statement that it is a Duke University Health System Medical Review Committee program created pursuant to N.C. Gen. Stat. § 131E-95.

**RPD No. 9**. As stated above, Duke will supplement this response.

**RPD No. 10**. Duke will supplement with Bates numbers for the previously produced documentation as stated above. Duke requests clarification of Plaintiff's statements regarding these documents being kept in electronic form.

**RPD No. 19**. (Also Pl. Section III of ltr.). Duke disagrees with Plaintiff's assertion that its response was incomplete or somehow was an effort to "fool" Plaintiff. Duke stated a valid objection to Plaintiff's request for documentation related to legal matters without any relevance to the instant action. Plaintiff's request is overly broad on its face as it does not even attempt to limit the scope of this request to matters of disability or sex discrimination or retaliation. Further, Duke's response to Interrogatory Number 14 makes clear that it has no knowledge of any other complaints of sex or disability discrimination or retaliation with respect to the individuals referenced. Duke's position with respect to Plaintiff's contentions concerning the relevancy of the *Seaman* litigation are fully set forth in briefing on that issue. Duke produced relevant, responsive documentation to this request in its production of the Faculty Hearing Committee recording.

**RPD No. 20**. The Letter states: "Please advise how attorney-client or work product doctrines might apply to documents submitted to or received from the EEOC." As Plaintiff's counsel has now clarified Plaintiff's request to be countenancing *only* communications to or from the EEOC, Duke would agree that there would be no need for a privilege or work product objection. Duke's objection was stated based on the wording of Plaintiff's request which stated: "All documents submitted to or received by Defendant in the course of the EEOC process preceding this lawsuit" which was broader than Plaintiff's narrower position in the Letter. Thank you for clarifying. Duke will withdraw its objection in light of Plaintiff's clarification that this request was intended to be limited to communications to/from the EEOC.

**Responses to Interrogatories**:

**Interrogatory Number 1**. Plaintiff's contention that Duke "deliberately" misunderstood Plaintiff's interrogatory is baseless. Duke provided a thorough response to Plaintiff's interrogatory as written taking steps to clarify and provide a basis for each statement in its objection. Duke's initial response provided Plaintiff a description of the documents that were produced to Plaintiff. However, Duke will supplement with Bates numbers for the previously produced and identified documentation.

**Interrogatory Number 3**. Plaintiff's interrogatory sought identification of the substantive grounds and metrics by which Dr. Shaughnessy's performance was assessed throughout his employment and identify any documents reflecting the same. Duke's response objected on the overly broad and unduly burdensome nature of the request, yet still responded identifying teaching scores, resident evaluations, clinical quality metrics, team feedback/input, records of departmental

service, publication record, research activity, documented performance concerns, and data regarding academic progress as bases for assessment of Plaintiff's performance. Clearly many of these items would be contained in Plaintiff's department file which has been produced along with documented feedback and concerns noted in Dr. Martin's documentation produced. Duke will supplement its response with the Bates numbers for the documents produced and will similarly provide Bates numbers for subsequent supplemental production responsive to this request.

**Interrogatory Number 4.** Plaintiff's interrogatory was facially overly broad as written and Duke's objection on that basis is valid. Duke is obligated to answer interrogatories as they are written, not as Plaintiff may wish he had written the interrogatory in retrospect. To the extent the Duke Chronicle articles appeared after the timeframe stated, Duke would withdraw that position. This does not, however, negate the overly broad nature of Plaintiff's request concerning conversations between "any agent" of Duke's Department of Anesthesiology, "any agent" of Regional Anesthesia, PLLC or Duke Regional. Duke's response provided information concerning recollection of discussions engaged in by Dr. Edward Sanders with Dr. Joseph Mathew and Dr. Gavin Martin concerning Plaintiff's desire to join Regional Anesthesia, which appears to be the target communications referenced in your letter. The dates and times of these communications which were believed to be, and are identified as verbal were not recollected. Duke's response stated that to the extent any documents are located during an ESI search using valid, agreed search terms that are not subject to any privilege or immunity from the relevant custodians, Duke will produce the documents that may reflect dates of the communications.

**Interrogatory Number 5, 6, 10, 12.** Notwithstanding Duke's objections to Plaintiff's interrogatories as written, Duke has not disagreed that Plaintiff is entitled to discovery concerning counseling he received or his unprofessional conduct. Duke pointed to known documents in Plaintiff's department file and Dr. Martin's file which have been produced. As you are aware, the parties have engaged in lengthy discussions and communications seeking to reach agreement on ESI search terms. Within the extensive list of terms proposed by Duke are terms aimed at identifying additional communications on the very issue of counseling and Plaintiff's conduct. Duke has not attempted to block discovery on these issues. Duke will supplement with the Bates numbers for the documents referenced in Plaintiff's department file and Dr. Martin's file previously produced and will supplement production with further documentation regarding resident evaluations and teaching scores (beyond those in Plaintiff's department file).

**Interrogatory Number 7.** Duke's use of the term "finalized" is synonymous with "made." Duke will supplement with the Bates numbers for Plaintiff's department file and Dr. Martin's file previously produced.

**Interrogatory Number 9.** Duke identified the individuals who assisted with providing information for its responses. Plaintiff's request for the extent to which each individual was involved seeks information that is protected from disclosure by the attorney-client privilege or attorney work-product doctrine.

**Interrogatory Number 11 and 21.** Duke disagrees with Plaintiff's contention that review procedures in other constituent schools of Duke University (i.e. **not** the School of Medicine where

Plaintiff was employed) are relevant and proportional to the needs of this case. The Schools operate differently. This is evident in the reporting structure wherein the deans of the School of Medicine and School of Nursing report to the Chancellor for Health Affairs. The other deans report to the Provost. The Duke Faculty Hearing Committee's unanimous finding in Dr. Shaughnessy's case recognized the unique characteristics of the School of Medicine and that Appendix C's recommendations did not impose specific procedures that were to be applied to the School of Medicine non-tenure track clinical faculty. Duke will supplement with the Bates numbers of Ann Brown's documents previously produced and will supplement with Faculty Hearing Committee Chair Tom Metzloff's electronic files and Ann Brown's electronic file.

**Interrogatory Number 13.** Plaintiff's interrogatory requested that Duke "[i]dentify all persons with whom Defendant, by and through its agents have communicated (exclusive of counsel acting in a privileged capacity) concerning the allegations in Plaintiff's Complaint. For each communication, identify the time, date, place, and substance of those communications and provide the contact information for each person." Plaintiff's letter implicitly concedes that such a facially overly broad request is really the issue, not Duke's response. Plaintiff now seeks to narrow the focus of the request to Drs. Mathew, Martin, Gadsden, and Sanders. Duke is obligated to respond to Plaintiff's requests as written, not as Plaintiff now wishes he would have written them in retrospect.

**Interrogatory Number 16.** Duke substantively responded to Plaintiff's interrogatory and has produced Plaintiff's department file which contains many of the documents referenced in Duke's response. Duke will supplement with Bates numbers for the documents already produced. Duke has also proposed ESI search terms aimed at further identifying documents that may reflect feedback concerning Plaintiff's performance.

**Interrogatory Number 17.** As stated above, Duke will supplement its production with documentation reflecting publications by members of the Department of Anesthesiology.

**Interrogatory Number 18.** Plaintiff's interrogatory requested that Duke "[i]dentify every act taken by any Officer (including President and Provost), Institutional Body (including Board of Trustees, Academic Council, and Executive Committee of Academic Council), or Dean of any constituent school of Duke (including School of Medicine and School of Nursing) in order to approve, study, amend, or implement the review procedures for reappointment of regular rank, non-tenure faculty described in Pages C8-C10 of the DFH ("Reappointment Review Procedure"), attached hereto as Exhibit A, from November 1990 until the date of this writing, and identify any documents related thereto. The foregoing includes, but is not limited to, any meeting minutes, transcript(s) of deliberation, or resolution(s) of the Academic Council, Board of Trustees, or Cabinet of Deans or any correspondence by or between the Provost, President, Chair of the Academic Council, Dean of the School of Medicine, or Dean of the School of Nursing." As written, Plaintiff's request is overly broad, unduly burdensome, not proportional, and seeks information that is not relevant. Plaintiff is seeking identification of "every act" and "any documents related thereto" by numerous individuals and leadership bodies over a 30-year period. This is facially unreasonable. Plaintiff's scorched earth interrogatory requesting expansive reports and documentation, including from deans of other schools is patently unreasonable. Nevertheless,

as stated above, Duke will supplement with the electronic file folders of Faculty Hearing Committee Chair Tom Metzloff which were created in connection with the Duke Faculty Hearing Committee's unanimous finding in Dr. Shaughnessy's case that it was never understood that Appendix C's recommendations applied to the School of Medicine non-tenure track faculty like Plaintiff. Duke has further proposed ESI custodians and search terms related to Plaintiff's faculty hearing grievance. In addition to supplementation with Professor Metzloff's files and materials reviewed by President Price, Duke will supplement with the Bates numbers of Ann Brown's documents produced as stated above.

**Interrogatory Number 19.** Plaintiff's interrogatory requested that Duke "[i]dentify and describe the efforts taken by Duke's School of Medicine to respond to the suicide of Dr. Kassik in mid-2016, including any departmental or faculty meetings held, instructions given to faculty regarding how to behave towards residents regarding this issue, any objections or complaints raised by any Duke Faculty regarding the aforementioned efforts, and identify any documents related thereto." Plaintiff contends that the information sought in this interrogatory concerning every aspect of Duke's response to the tragic suicide of a resident, is relevant to Plaintiff's claim of retaliation. Duke disagrees. Plaintiff's claim of retaliation concerns his alleged complaints about alleged remarks by Dr. Mathew concerning the suicide to which Plaintiff allegedly voiced an objection. The issues relevant to Plaintiff's retaliation claim are what Plaintiff knew or believed, what Plaintiff said or did, whether the decision-makers were aware of any such statements or actions by Plaintiff, and what actions they took. In negotiating ESI search terms, Duke has proposed search terms likely to identify documentation related to the elements of plaintiff's claim of retaliation, including proximity searches of correspondence regarding Plaintiff and Kassik, suicide, complaints, and others. This information Plaintiff seeks in this interrogatory as written is not relevant to Plaintiff's claim. Duke stands on its objections to this interrogatory. Plaintiff's Letter asks Duke to advise how attorney-client and work-product privileges may apply to this request. Plaintiff's request covering "efforts taken by Duke's School of Medicine to respond to the suicide" and "any documents related thereto" sweeps so broadly that it could implicate privileged communications or documentation.

**Interrogatory Number 20.** Plaintiff's interrogatory requested that Duke "[i]dentify and describe any efforts undertaken by Dr. Jones at Duke to support those with mental illness following Dr. Kassik's suicide and any complaints or objections made by Dr. Cheryl Jones against Duke regarding its response to Dr. Kassik's suicide, including Duke's response to those complaints, objections, or efforts and the identity of any documents related thereto. The foregoing includes Dr. Jones' attempts to meet with residents following Dr. Kassik's suicide, Dr. Jones' attempts to make literature available for residents and physicians on the topic of suicide, Dr. Sol Aronson's meeting with Dr. Jones related to this issue, any correspondence sent Dr. Jones to any member of the Duke Anesthesiology Department related to Dr. Kassik's suicide, or received by Dr. Jones from any member of Duke's Anesthesiology Department related to Dr. Kassik's suicide, or related to depression or mental illness." Plaintiff contends that the information sought in this interrogatory concerning actions taken by another employee is relevant to Plaintiff's claim of retaliation. Duke disagrees. Plaintiff's claim of retaliation concerns his alleged complaints about alleged remarks by Dr. Mathew concerning Dr. Jones to which Plaintiff allegedly voiced an objection. The issues relevant to Plaintiff's retaliation claim are what Plaintiff knew or believed, what Plaintiff said or

did, whether the decision-makers were aware of any such statements or actions by Plaintiff, and what actions they took. In negotiating ESI search terms Duke has proposed search terms likely to identify documentation related to the elements of plaintiff's claim of retaliation, including proximity searches of correspondence regarding Plaintiff and "Cheryl Jones," suicide, complaints, and other terms. This information Plaintiff seeks in this interrogatory as written is not relevant to Plaintiff's claim. Duke stands on its objections to this interrogatory.

      I believe this letter addresses the responses at issue in your letter. We currently have a call scheduled for tomorrow, July 26, 2019 to discuss these matters. I look forward to speaking with you.

Sincerely,

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

Kimberly J. Lehman

KJL/kjl

Cc:   John A. Zaloom, Esq.
       Via Email only

38534431.1