# Ogletree
# Deakins

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*Attorneys at Law*

4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
Telephone: 919.787.9700
Facsimile: 919.783.9412
www.ogletreedeakins.com

Kimberly J. Lehman
(919) 789-3183
Kim.Lehman@OgletreeDeakins.com

August 18, 2017

CONFIDENTIAL

<u>Via Digital Charge System Upload</u>
Ms. Johnnie M. Barrett
Senior Federal Investigator
U.S. E.E.O.C. – Raleigh Area Office
434 Fayetteville Street, Suite 700
Raleigh, NC  27601-1701

   Re:  **Charge No.:** 433-2017-02262
       Charging Party: Dr. Michael Shaughnessy
       Respondent: Duke University

Dear Ms. Barrett:

  This letter serves as the position statement of Respondent Duke University ("Duke") in the above-referenced charge. Duke denies that it discriminated against Charging Party Michael Shaughnessy because of his alleged disability or retaliated against Charging Party because of alleged protected activity in violation of the Americans with Disabilities Act ("ADA") and/or Title VII of the Civil Rights Act of 1964 ("Title VII"). Further, Duke denies that it violated Charging Party's rights under any other law, rule or obligation.[1]

## PRELIMINARY STATEMENT

  Dr. Shaughnessy is an anesthesiologist. In 2011, Duke University School of Medicine Department of Anesthesiology ("Department") hired Dr. Shaughnessy as an Assistant Professor. Within the department, Dr. Shaughnessy worked with the Division of Orthopaedics, Plastics, and Regional Anesthesiology ("Division"). As a non-tenured faculty member, Dr. Shaughnessy worked under a one-year contract subject to annual renewal. On January 6, 2017, Duke notified Dr. Shaughnessy it would not renew his contract for the fiscal year beginning in July. Dr. Shaughnessy's last day with the Department was June 30, 2017.

---

[1] This response does not include exhaustive details regarding the Charging Party's employment with Duke, but is instead a succinct explanation of facts and circumstances regarding the allegations raised by the Charging Party intended to assist the Agency to promptly dismiss this matter. Duke reserves the right to provide additional information as needed.

Atlanta • Austin • Birmingham • Boston • Charleston • Charlotte • Chicago • Cleveland • Columbia • Dallas • Denver • Detroit Metro • Greensboro • Greenville
Houston • Indianapolis • Jackson • Kansas City • Las Vegas • Los Angeles • Memphis • Miami • Minneapolis • Morristown • Nashville • New Orleans • New York City
Orange County • Philadelphia • Phoenix • Pittsburgh • Portland • Raleigh • St. Louis • St. Thomas • San Antonio • San Francisco • Stamford • Tampa • Torrance • Tucson • Washington

Ogletree
Deakins

Dr. Shaughnessy contends that the decision not to renew his contract was the result of disability discrimination based on: (1) his rosacea – a condition that would not impact his ability to perform the essential functions of his job; (2) his cardiac pacemaker – a condition that he admits Duke accommodated without issue; and (3) his alleged depression – a condition that Dr. Shaughnessy first mentioned to his department leadership only after they made the decision to not renew his contract. Duke is not aware of any other details of his alleged depression.

Dr. Shaughnessy's retaliation claim is nothing more than vague innuendo. Without offering any specifics in support of his allegations, Dr. Shaughnessy alleges Department Chair Dr. Joseph Mathew made disparaging remarks about a female resident who committed suicide and another female physician who took a medical leave. Dr. Mathew denies making disparaging remarks and none of those involved with the decision not to renew Dr. Shaughnessy's contract have knowledge of any disparaging comments concerning the gender and/or disability of these physicians by Dr. Mathew. Moreover, none of these individuals ever heard Dr. Shaughnessy make any comments that would remotely constitute protected activity within the meaning of the ADA or Title VII.

In his role as an Assistant Professor, the expectation was that Dr. Shaughnessy would be engaged in the academic mission of the Department. However, he published only one journal article during his five (5) years with the Department, declined offers to participate in other research/academic projects, received teaching review scores below the average of his peers, and in February of 2016 asked to be taken off the list of core faculty members. In the fall of 2016, Dr. Shaughnessy expressed interest in a position with another Duke affiliated entity which does not have the same academic responsibilities. His Department leadership supported Dr. Shaughnessy's pursuit of this position, believing it would be a better fit for his interests. But leadership also made clear that there would be no exception with regard to a written policy requiring Dr. Shaughnessy's forfeiture of a bonus payment if he left his position. Dr. Shaughnessy contended that the policy should not apply to him and further rebuked constructive feedback concerning his work performance. Importantly, Dr. Shaughnessy never alleged that his work performance issues were related to an alleged disability. In fact, he refused to consider the notion that he had any performance deficiencies. The decision not to renew Dr. Shaughnessy's contract was based on Dr. Shaughnessy's admitted non-engagement with the academic duties of his role and his inability to accept constructive feedback from his leadership. Illegal discriminatory and/or retaliatory animus played no role in the decision not to renew his contract.

Dr. Shaughnessy's allegations of discrimination and retaliation are without merit and should be dismissed summarily.

## EMPLOYER BACKGROUND

Duke is an equal employment opportunity employer and strives to maintain a workplace free of unlawful discrimination. Duke maintains an effective EEO Policy attached as **Exhibit 1**. Duke's policy prohibits disability discrimination and provides extensive resources to assist

employees who may need a reasonable accommodation for their disability. Duke policies are available online and in the Employee Handbook.

## PERTINENT FACTUAL BACKGROUND

### A. Charging Party's Hire and Expectations

Dr. Shaughnessy completed an anesthesiology fellowship at Duke in 2011 and was invited to stay on as a non-tenured Assistant Professor with the Department of Anesthesiology at Duke University School of Medicine. Besides his faculty appointment, Dr. Shaughnessy received membership in the Private Diagnostic Clinic faculty practice plan which allowed him to be compensated for his clinical duties at Duke University Medical Center. Thus, the expectation for Dr. Shaughnessy was two-fold. First, he would perform academic duties including involvement with clinical research projects and grant writing, and teaching and supervision of medical students, residents, fellows, and nurse anesthetists. Second, he would perform clinical duties related to the delivery of anesthetic care to patients.

### B. Academic Engagement and Productivity Lagging

Dr. Shaughnessy's Department leadership expected him to be engaged in the Department's academic mission. However, in over five (5) years as a faculty member, Dr. Shaughnessy produced only one case report for publication. He repeatedly declined opportunities to participate in scholarly activity (e.g. research, co-authorship, contributing to continuing education workshops). Dr. Shaughnessy appeared to view the academic mission of the department as "extra work" even though he received an academic salary in addition to his clinical compensation.

With regard to teaching, student feedback describes Dr. Shaughnessy as "brusque" and "impatient and high strung." In February of 2016, Dr. Shaughnessy, acknowledging the decline in his teaching scores, and sought to be removed as a "core faculty" member with respect to residency. In his role as Assistant Professor, removal of teaching obligations was not a reasonable option. Instead, the director of the medical residency program met with Dr. Shaughnessy to provide constructive guidance to improve as an instructor. But there was not significant improvement as Dr. Shaughnessy received the following student feedback in July 2016:

> Dr. Shaughnessy's "teaching style" in the OR seems to be criticizing and questioning almost every (even routine) decision. This frequently occurred at busier times in the case or when there was a lot of work to be done. A lot of the time it seemed like he was doing it just to be contrarian or adversarial, as if he wanted to argue or debate. Coupled with what I perceived to be his poor interpersonal skills, it left me very dissatisfied as a learner. He knows a lot, but his effectiveness as a teacher is clearly limited by his style and personality. I'm not asking for an ego boost, but I don't think I received one positive piece of



feedback despite taking care of some challenging patients with him. A better teacher would strive for more balance and try to actually connect with the learner.

In sum, the academic mission of the Department was not a priority for Dr. Shaughnessy and it showed in his teaching and his lack of scholarly work.

### C. Charging Party Explores Opportunities With Regional Anesthesia, PLLC

Dr. Shaughnessy explicitly acknowledged that academia was not his focus when he reached out to Dr. Edward Sanders, Chief, Duke Community Division of Anesthesia d/b/a Regional Anesthesia, PLLC ("Regional PLLC") on or about August or September 2016. Regional PLLC is the community practice partner of the Department of Anesthesiology. Regional PLLC's primary location is Duke Regional Hospital.[2] The practice also serves multiple other surgical sites including the Davis Ambulatory Surgical Center, the Mebane Surgery Center, the Triangle Orthopaedics Surgery Center, and others. While Regional PLLC is a division of the Department of Anesthesiology, it operates more like a private practice. Regional PLLC does not have the same compensation plan as Dr. Shaughnessy's division. More importantly, the academic requirements for Regional PLLC physicians are far less. During his first meeting with Dr. Sanders, Dr. Shaughnessy noted that grant writing and other academic expectations of his current Department were not his priority.

Dr. Shaughnessy informed his Vice Chair, Dr. Holly Muir, and his Division Chief, Dr. Gavin Martin, of his interest in Regional PLLC. Both fully supported Dr. Shaughnessy's interest in pursuing potential opportunities with Regional. Dr. Martin thought the opportunity would be a good fit and told Dr. Shaughnessy that he would be happy to assist if he could do so.

### D. November 2016 Meeting with Dr. Martin and Dr. Gadsden

Shortly thereafter, in October 2016, Dr. Martin was promoted to Vice Chair of Clinical[3] and Dr. Jeffrey Gadsden took over as Division Chief for Charging Party's division.

In November 2016, Dr. Martin and Dr. Gadsden scheduled a meeting with Dr. Shaughnessy to discuss the benefits consequences if Dr. Shaughnessy left his current position to take a job with Regional PLLC. One of the consequences was that Dr. Shaughnessy would forfeit eligibility for a "gain share" (bonus) payment. The Department of Anesthesiology Physician Compensation Plan states:

> Gain sharing compensation will be distributed biannually and is not guaranteed. . .
> Faculty who are within six months of the completion of a term contract or who

---

[2] Duke Regional Hospital was formerly called Durham Regional Hospital.

[3] Dr. Holly Muir left Duke to take a position as a Department Chair at the University of Southern California.

are leaving the department within six months are not eligible for gain sharing distribution.

Dr. Shaughnessy was aware of the written policy, but asked that an exception be made because he was contemplating a move to an entity within the Duke Health System. Dr. Martin and Dr. Gadsden explained that Regional PLLC operates under a separate pay structure. They also made clear the policy is consistently applied and Dr. Shaughnessy was not being singled out.

In an effort to help Dr. Shaughnessy succeed as he moved forward in his career, Dr. Martin and Dr. Gadsden sought to offer some constructive feedback. Dr. Shaughnessy objected to the notion that he had any deficiencies and demanded examples. Examples provided included: repeated lateness, refusal to relieve faculty in a timely manner, and his refusal to accept certain assignments of cases asked of him. Dr. Shaughnessy provided no indication he would be taking the feedback to heart.

Significantly, there was absolutely no mention of any alleged disability, any alleged derogatory comments by Dr. Mathew (or anyone else), any discrimination by Dr. Mathew (or anyone else), and there were no threats or ultimatums, as alleged.

E. **Non-Renewal of Dr. Shaughnessy's Contract**

Each year, the Department leadership evaluates whether to renew its physician contracts. Believing that a non-academic focused position would better fit Dr. Shaughnessy's lack of interest in the academic requirements of his role, and in light of Dr. Shaughnessy's demonstrated lack of ability to receive feedback from his leadership, Dr. Martin and Dr. Gadsden recommended the non-renewal of Dr. Shaughnessy's contract to Department Chair Dr. Joseph Mathew.

Non-tenured faculty are appointed yearly (fiscal year running July 1 – June 30). Duke policy provides that faculty will be notified by January 15th if the department does not intend to renew the contract for the following fiscal year. Besides providing significant notice to allow faculty to locate other work opportunities, non-renewal need not be "for cause." This allows the faculty member an opportunity to depart without a blemish on their record/work history.

On January 6, 2017, Dr. Mathew, Dr. Martin, and Dr. Gadsden met with Dr. Shaughnessy to inform him of the non-renewal. Dr. Mathew asked that Dr. Shaughnessy act in a professional manner as he fulfilled the remainder of his contract term, but this was not a condition of supporting Dr. Shaughnessy's efforts to obtain a position with Regional PLLC or elsewhere. After relaying the decision, Dr. Gadsden – in the context of relaying his belief that Dr. Shaughnessy did not appear to be engaged in, inspired by, or dedicated to the academic mission of the Department – used words to the effect of "you don't appear to be happy here" to which Dr. Shaughnessy responded "you should be careful with your choice of phrase, I have depression." This is the first time Dr. Shaughnessy mentioned alleged depression to Dr. Mathew, Dr. Martin

or Dr. Gadsden. Significantly, this is only after Dr. Shaughnessy was informed of the decision not to renew his contract.

Dr. Shaughnessy requested Dr. Mathew reconsider the decision. Dr. Mathew presented the issue to the Senior Cabinet (i.e. department leadership) for review. The cabinet unanimously determined the non-renewal should stand. Dr. Shaughnessy also appealed to the School of Medicine. Again, the decision was upheld. Dr. Shaughnessy did not raise allegations of discrimination or retaliation in his appeal.

### F. Dr. Shaughnessy's Termination and Appeal

Dr. Shaughnessy has also filed an appeal with the Faculty Hearing Committee alleging a technical violation of the faculty review process (which does not include any alleged disability and/or protected activity) which is currently under consideration. Dr. Shaughnessy's last day of employment was June 30, 2017.

## THE CHARGE SHOULD BE DIMSISSED

### A. No Disability Discrimination

Dr. Shaughnessy's disability discrimination claim should be dismissed. In his Charge, Dr. Shaughnessy alleges that he has a history of and/or is regarded as having the following disabilities: rosacea, a cardiac pacemaker, and a history of depression.

- **Rosacea:** This skin condition would not impact Dr. Shaughnessy's ability to perform the essential functions of his job. Dr. Shaughnessy provides no evidence of any discriminatory comments or acts related to his alleged rosacea.
- **Cardiac Pacemaker:** Dr. Shaughnessy admits Duke provided an accommodation for his cardiac pacemaker by excusing Dr. Shaughnessy from performing anesthesia for patients in rooms where magnets (e.g. MRI scans) are utilized. Dr. Shaughnessy provides no evidence of any discriminatory comments or acts related to his pacemaker for which he received an accommodation.
- **Depression:** Dr. Shaughnessy first mentioned his alleged depression to his department leadership only after they made the decision to not renew his contract. Duke is not aware of any other details of his alleged depression.

The department provided Dr. Shaughnessy an accommodation for his cardiac pacemaker for years without issue. Dr. Shaughnessy requested no accommodation for alleged depression. Indeed, the department leaders identified in the Charge were unaware of any alleged depression until they informed Dr. Shaughnessy that his contract would not be renewed. His contention that he was regarded as disabled is rank speculation with no support in the facts. Dr. Shaughnessy's disability discrimination claim should be dismissed.

B. No Retaliation

1. No Protected Activity

Dr. Shaughnessy's retaliation claim must also be dismissed. As an initial matter, and dispositive of the issue, Dr. Shaughnessy did not engage in any protected activity within the meaning of the ADA or Title VII.

Dr. Shaughnessy contends that Dr. Mathew "openly criticized a disabled female physician in our Department who had committed suicide." It is true that a second year resident tragically took her life in June of 2016. However, Dr. Mathew did his utmost to treat the situation with respect, compassion, and in accordance with the wishes of her family with whom Dr. Mathew was in contact. Dr. Mathew did not make any disparaging or derogatory comments about the deceased, much less any such comments related to her gender and/or disability. Other than noting the utterly preposterous nature of this allegation, it is difficult to respond further as Dr. Shaughnessy does not explain what comments he considers to have been critical of the deceased.

Dr. Shaughnessy's next contends that Dr. Mathew "publicly reprimanded and belittled another disabled female physician." This allegation is equally vague and evasive as it provides no indication that any of the unspecified comments were related to an alleged disability or the physician's sex. Dr. Mathew did not make any disparaging or derogatory comments about any such physician, much less any such comments related to sex and/or disability.

Finally, Dr. Shaughnessy alleges that he "objected to [Dr. Mathew's] criticism of these disabled physicians" during an October 2016 meeting. Again, Dr. Shaughnessy does not explain the alleged criticism. Moreover, he doesn't identify any comments of his own that would constitute protected activity. Dr. Shaughnessy, like all members of the faculty in attendance, was free to speak during the meeting. Nothing about Dr. Shaughnessy's participation in the meeting stands out to Dr. Mathew or was construed by him, Dr. Martin, or Dr. Gadsden as opposing alleged discrimination. Unspecified comments and vague innuendo provide no basis for finding Dr. Shaughnessy engaged in protected activity.

2. Mischaracterization of November 2016 Meeting Is A Red Herring

In an effort to further his smoke and mirrors retaliation narrative, Dr. Shaughnessy contends that Dr. Martin and Dr. Gadsden called him into a meeting in November to "reprimand me at Chair Mathew's request" because of his unspecified opposition to Dr. Mathew's alleged discrimination. This allegation is false on multiple levels. First, Dr. Mathew did not request, initiate, or even know of the meeting. Second, neither Dr. Martin nor Dr. Gadsden believed Dr. Shaughnessy had engaged in any protected activity. Neither ever heard Dr. Mathew make any disparaging remarks and/or engage in any conduct that could be deemed discriminatory. And neither recalls any comment by Dr. Shaughnessy that could be deemed as objecting to alleged discrimination.

Finally, Dr. Shaughnessy's characterization of the meeting as one where it was suggested that he look for alternate employment to "avoid Chair Mathew's wrath" is fiction. Dr. Shaughnessy, of his own accord and well prior to the meeting, initiated discussion of his interest in a position with Regional PLLC. There were no threats of sabotage. There was no ultimatum. The meeting was called to explain the financial consequences to Dr. Shaughnessy if he were to leave the department.

3. No Sabotage or Retaliatory Action

Dr. Shaughnessy's contention that Dr. Mathew, Dr. Martin, and Dr. Gadsden played a role in Regional PLLC's decision not to hire him is false. None of them ever contacted Regional PLLC to relay negative information or try to sabotage Dr. Shaughnessy. Indeed, that is exactly what the Chief of Regional PLLC, Dr. Eddie Sanders, told Dr. Shaughnessy when Dr. Shaughnessy raised this absurd allegation in February 2017 after being told by Dr. Sanders that he did not have a position available and did not think it would work out going forward. Dr. Sanders flatly denied any involvement by Dr. Mathew, Dr. Martin, Dr. Gadsden, or anyone else. Dr. Sanders told Dr. Shaughnessy that no one had made any negative comments or played any role in his decision. Charging Party's allegations are without merit and his retaliation claim should be dismissed.

### THE COMMISSION SHOULD ISSUE A "NO CAUSE" DETERMINATION

Charging Party's layering of vague innuendo upon vague innuendo provides no basis for finding discrimination or retaliation. Never did Dr. Shaughnessy raise any complaints of sex or disability discrimination. Never did Dr. Shaughnessy request an accommodation other than for his pacemaker, which accommodation was willingly provided. And never did Dr. Shaughnessy engage in protected activity within the meaning of the ADA and/or Title VII. Dr. Shaughnessy's claims should be dismissed and the Commission should issue a "no cause" determination.

Thank you for your attention to this matter. Please contact me directly should you have further questions.

Sincerely,

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

Kimberly J. Lehman

KJL/kjl
Encl.