# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL SHAUGHNESSY, )
)
Plaintiff, )
)
v. ) 1:18-CV-461
)
DUKE UNIVERSITY, PRIVATE )
DIAGNOSTIC CLINIC, PLLC, )
)
Defendants. )

## ORDER

Dr. Michael Shaughnessy, formerly an anesthesiologist at Duke University, sued Duke and the Private Diagnostic Clinic, PLLC (PDC), alleging discrimination, wrongful discharge, and contract-related claims after his Duke contract was not renewed. Because the undisputed evidence shows that Dr. Shaughnessy was not an at-will employee of PDC, as is required for a wrongful discharge claim, summary judgment on this claim will be granted for PDC.

### Procedural Background

After the pleadings closed, PDC moved for partial judgment on the pleadings on Dr. Shaughnessy's wrongful discharge claim pursuant to Fed. R. Civ. P. 12(c), contending that Dr. Shaughnessy was not an at-will employee of PDC. This claim requires consideration of the PDC Operating Agreement, a document outside the pleadings, and pursuant to Fed. R. Civ. P. 12(d), the Court converted the motion to one for partial summary judgment. Doc. 107.

The material facts relevant to the wrongful discharge claim are largely undisputed, based on the amended complaint, Doc. 19, and PDC's answer, Doc. 28; the offer letter, Doc. 81-1; and the PDC Operating Agreement. Doc. 24-2. To the extent they are not, the Court views the evidence in the light most favorable to Dr. Shaughnessy, the non-moving party.

**Facts**

By offer letter dated April 13, 2011, Duke University offered Dr. Shaughnessy employment as a faculty member and assistant professor in the Department of Anesthesiology, which Dr. Shaughnessy accepted by signing the offer letter. Doc. 81-1; Doc. 19 at ¶¶ 7, 12; Doc. 28 at ¶¶ 7, 12.[1] The faculty appointment was for one year, to be renewed annually subject to satisfactory performance and program needs. Doc. 81-1 at 5. Duke and Dr. Shaughnessy contemplated that as part of his work with Duke, he would become a "member of the Private Diagnostic Clinic," Duke's "faculty practice plan," and that Dr. Shaughnessy would "need to execute the PDC Operating Agreement." *Id.* at 2.

The Private Diagnostic Clinic is a professional limited liability company organized and existing under the laws of the State of North Carolina. Doc. 19 at ¶ 3; Doc. 28 at ¶ 3. The purpose of the PDC is "to provide a structure through which its Members can engage in the private practice of medicine for private gain, while retaining their academic relationship with Duke University." Doc. 24-2 at ¶ 2.1. Only persons with an academic

---

[1] Dr. Shaughnessy made minor revisions to the letter agreement to terms not relevant to the present motion.

2

appointment to the faculty of the Duke School of Medicine are eligible to become a member of PDC. *Id.* at ¶ 3.1.

Dr. Shaughnessy's relationship with PDC was governed by the Operating Agreement, Doc. 24-2, which was the operative contract between Dr. Shaughnessy and PDC. *See* Doc. 107.[2] Under this Agreement, he was a member of the PLLC, *see* Doc. 24-2 at ¶ 3.2, and was paid for the clinical work he did based on a formula established in the Operating Agreement. *Id.* at ¶ 5.3.

The Operating Agreement lists the ways in which PDC membership can or will terminate. *Id.* at ¶ 3.3. Specifically, consistent with the requirement that only Duke faculty members can be members of PDC, PDC membership "shall cease" when the member "ceases, for any reason, to be a member of the faculty of Duke University." *Id.* It also "shall cease" if the member "is adjudged a bankrupt." *Id.* In addition, the Agreement authorizes termination of membership for persons remaining on the Duke faculty if two-thirds of the member's PDC department voted the member out, after notice of the reasons and under specific procedures outlined in the Agreement. *Id.*

In January 2017, Duke gave Dr. Shaughnessy notice that his Duke appointment would not be renewed for the following year. Doc. 19 at ¶ 59; Doc. 28 at ¶ 59. Upon

---

[2] In converting the motion for judgment on the pleadings to summary judgment, the Court gave Dr. Shaughnessy, who objected to the Court's consideration of the Operating Agreement in connection with the motion for judgment on the pleadings, an opportunity to file additional evidence if he contended that the Operating Agreement was not the operative contract governing his relationship with PDC. Doc. 107. He did not file anything.

completion of his Duke appointment, his relationship with PDC also ended.  Doc. 19 at ¶ 79; Doc. 28 at ¶ 79.

**Wrongful Discharge in Violation of Public Policy**

North Carolina is an "at-will" employment state, where ordinarily "employees can be fired at any time and for any reason (or even no reason) by an employer."  *Burch v. Philip Morris USA, Inc.*, 296 F. Supp. 2d 646, 649 (M.D.N.C. 2004) (citing *Still v. Lance*, 279 N.C. 254, 182 S.E.2d 403 (1971)).  There is an exception to the "at will" rule if the termination violates public policy.  *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989).  Only an at-will employee can bring a cause of action under North Carolina law for wrongful termination in violation of public policy.  *Trexler v. Norfolk S. Ry. Co.*, 145 N.C. App. 466, 470–71, 550 S.E.2d 540, 542–43 (2001); *Burch*, 296 F. Supp. 2d at 650.  Thus, a wrongful discharge claim may "be asserted only in the context of employees at will, and not by an employee employed for a definite term or . . . subject to discharge only for just cause."  *Trexler,* 145 N.C. App. at 470–71, 550 S.E.2d at 543 (quoting *Houpe v. City of Statesville*, 128 N.C. App. 334, 343, 497 S.E.2d 82, 88 (1998)).[3]

**Analysis**

It is undisputed the Operating Agreement was the operative contract governing the relationship between Dr. Shaughnessy and the PDC.  The parties appear to have assumed for purposes of this motion that the agreement can fairly be interpreted as creating an

---

[3] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted.  *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

employment relationship between Dr. Shaughnessy and PDC. The Court makes the same assumption, without expressing any view on that aspect of the wrongful discharge claim.

The undisputed evidence shows that the relationship was not at-will. As set forth in the Operating Agreement, PDC can end the relationship with a physician like Dr. Shaughnessy only under certain narrow and specified circumstances, such as when the faculty appointment at the medical school ends or upon a vote of the other members conducted only after particular procedures have been followed. Nothing in the agreement indicates that Dr. Shaughnessy's relationship with PDC could be terminated "at any time and for any reason (or even no reason)," *Burch*, 296 F. Supp. 2d at 649–50, and Dr. Shaughnessy has presented no other evidence as to any other agreement, implied or express, that would make him an at-will employee.

Dr. Shaughnessy contends that he was an at-will employee because the Operating Agreement did not contain a "just cause" requirement for termination, and thus he could be terminated for any reason or no reason. Doc. 105 at 7. But the at-will relationship also does not exist if the relationship has "a definite term." *Trexler*, 145 N.C. App. at 470–71, 550 S.E.2d at 542–43 (holding that a wrongful discharge claim may not be asserted "by an employee employed for a definite term or . . . subject to discharge only for just cause"). Under the Operating Agreement, Dr. Shaughnessy's eligibility for PDC depended on retaining his faculty position, which itself was subject to annual renewals; his relationship with PDC thus had a definite term. Doc. 81-1 at 5; Doc. 24-2 at ¶ 3.3. *See Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 605, 611, 486 S.E.2d 443, 444, 448 (1997) (university professor could not bring wrongful discharge claim since his

5

successive one- to two-year terms meant "he was employed pursuant to teaching appointments of definite duration").

There is no evidence that Dr. Shaughnessy had an employment relationship with PDC that was at will. This means "an essential element of [his] wrongful discharge claim" is "nonexistent." *Trexler*, 145 N.C. App. at 472, 550 S.E.2d at 543 (quoting *Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992)). Summary judgment for PDC on this claim is appropriate.

### Conclusion

In order to prevail on his wrongful discharge claim, Dr. Shaughnessy must show that he was an at-will employee of PDC. The Operating Agreement does not establish an at-will relationship. Among other reasons, it had a definite term: while Dr. Shaughnessy was on the faculty at Duke, which required annual reappointment. Because there is no evidence Dr. Shaughnessy was an at-will employee of PDC, his wrongful discharge claim will be dismissed.

It is **ORDERED** that the defendant Private Diagnostic Clinic's second motion for partial judgment on the pleadings, Doc. 93, is converted into a motion for partial summary judgment, and it is **GRANTED**. The plaintiff's claim against defendant PDC for wrongful discharge in violation of public policy is **DISMISSED**.

This the 10th day of July, 2020.

UNITED STATES DISTRICT JUDGE

6