IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:18-cv-00461

| | |
|---|---|
| MICHAEL SHAUGHNESSY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DUKE UNIVERSITY, PRIVATE )<br>DIAGNOSTIC CLINIC, PLLC, )<br>)<br>Defendants. )<br>) | **MEMORANDUM IN SUPPORT OF<br>PLAINTIFF'S MOTION FOR<br>SPOLIATION SANCTIONS** |

**NATURE OF THE MATTER BEFORE THE COURT**

Plaintiff Michael Shaughnessy moves this Court to sanction Defendant Duke University for spoliation of electronically stored information ("ESI") pursuant to Fed. R. Civ. P. 37(e).

Duke has been unable to produce text messages between decision-makers and key employees for the period between Dr. Shaughnessy's significant engagement in protected activity (October 2016) and when he was notified that he would be unable to transfer to Duke Regional Hospital ("DRH") (February 28, 2017) because the messages were "deleted." Critical text messages from November 1, 2016 through February 28, 2017 have been lost, and left Plaintiff unable to probe Duke's decision-making process. Nevertheless, Duke *has* been able to produce messages for October 2016, as well as March 2017 between Dr. Martin and others, but has failed to produce messages from the critical time period between Duke's decision-makers (November 1, 2016-February 28,

1

2017), instead indicating that select messages were "deleted." This includes not only the absence of messages produced from a particular individual for a time period, but decisionmakers and key employees who allegedly did not save any messages. To remedy the prejudice incurred, Plaintiff seeks an adverse inference instruction against Duke as well as the ability to present argument to the jury regarding the lost text messages.

## STATEMENT OF FACTS

*a. Exchange of Discovery between the Parties*

On March 13, 2019, Plaintiff served his First Set of Discovery Requests on Duke. In part, Dr. Shaughnessy sought correspondence between Plaintiff, Dr. Mathew, Dr. Martin, Dr. Gadsden, and Dr. Sanders for the period preceding and following his nonrenewal. (D.E. 111-36, Request for Production No. 14).

In response, Duke produced a handful of text message conversations between Dr. Martin and other individuals. As relevant here, Duke produced text messages between Dr. Martin and Dr. Stuart Grant from October 19, 2016, text messages between Dr. Martin and Jennifer Massengill from January 12, 2017, and text message conversations between Dr. Martin, Dr. Mathew, and Dr. Gadsden from March 2017. (D.E. 121-12; Exhibit 1, DEFS0012278; Exhibit 2, DEFS0012779; Exhibit 3, DEFS0012738). Evidence from January 2017 indicates that Dr. Martin was also exchanging messages with Dr. Sanders, but these messages were never produced. (Exhibit 4, DEFS0011100; Exhibit 5, at DEFS0010588). Furthermore, the text messages that were produced indicate that Duke's decision-makers did in fact exchange text messages regarding substantive matters involving Dr. Shaughnessy. (*See* Exhibit 3, DEFS0012738).

2

On October 17, 2019, a hearing was held before Magistrate Judge Peake regarding Plaintiff's Motion to Compel Discovery from Duke. (D.E. 58; D.E. 79). In ruling on Plaintiff's motion, Judge Peake noted that "the text messages have been or are being provided." (Exhibit 6, Oct. 17, 2019 Hearing Tr. 43:5-6).

Later on October 17, 2019, Plaintiff's counsel emailed counsel for the PDC—who largely handled discovery negotiations on behalf of both defendants[1]—inquiring about custodians for whom text messages had not been preserved. (Exhibit 7, Oct. 17-23 Emails). PDC's counsel responded that Defendants would produce the messages they could locate through an electronic search and later confirmed that a manual search had also been conducted which did not locate any additional responsive text messages. (*Id.*). PDC's counsel indicated that messages were "deleted as a matter of course" and that relevant text messages were not located in backup files for two custodians. (*Id.*).

*b. Other Relevant Events*

On October 19, 2016, Plaintiff engaged in protected activity by directly challenging Department Chair Joseph Mathew's comments in a divisional meeting about two disabled individuals and then publicly sharing his own experience with depression. (*See e.g.* D.E. 121-54, 25:18-26:10, 27:19-28:12, 36:5-21, 173:5-8). Later on the same day, Vice Chair Gavin Martin exchanged a text message with another member of Dr. Shaughnessy's division in which he stated that Dr. Shaughnessy had "bigger balls" than he did, in reference to Dr. Shaughnessy's conduct at the divisional meeting. (D.E. 121-

---

[1] Every member of the PDC is also employed by Duke and individuals relevant to this motion were under the control of both Defendants.

12).

Over the next several months, particularly in late November and throughout December, Dr. Shaughnessy's superiors debated whether to nonrenew his contract and end his career at Duke. (*See e.g.* D.E. 109-15, ¶ 3). On January 6, 2017, Dr. Shaughnessy was summoned into a meeting with Dr. Mathew, Dr. Martin, and Dr. Jeffrey Gadsden—his division chief—and informed that his employment with Duke would end on June 30, 2017. (D.E. 109-13, ¶ 17). Dr. Shaughnessy appealed his nonrenewal within his Department, within the Medical School, and, ultimately, in the Faculty Hearing Committee at Duke. (*See* D.E. 121-4, ¶¶ 16-20; D.E. 121-18, 14:2-11; D.E. 121-19). Dr. Shaughnessy also filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (D.E. 15-1; D.E. 15-2).

Prior to his engagement in protected activity, Dr. Shaughnessy had inquired about a transfer to another division within his Department which operated out of DRH and is headed by Dr. Eddie Sanders. (D.E. 121-7; D.E. 121-8). After Dr. Shaughnessy's interview with Dr. Sanders in Fall 2016, Dr. Shaughnessy's transfer was considered to be a foregone conclusion. (*See* D.E. 121-9, ¶ 8; D.E. 121-54, 51:10-19.). Dr. Shaughnessy continued to attempt a transfer throughout the Fall of 2016 and after his nonrenewal. (*See* D.E. 121-30). However, Dr. Shaughnessy was abruptly notified on February 28, 2017 that Dr. Sanders no longer considered him a "good fit" for DRH and that he would not be receiving a job offer. (D.E. 121-31, 2:2-24, 11:15-19).

During Dr. Shaughnessy's appeals in February 2017, Duke's in-house attorneys were consulted and Duke's leaders were informed that Dr. Shaughnessy would likely

4

pursue legal relief if his internal appeals were unsuccessful. (Exhibit 8, DEFS0006519-6524; Exhibit 9, DEFS0007384-7387). Duke was formally notified of Dr. Shaughnessy's pending EEOC charge on or about June 16, 2017. (Exhibit 10, DEFS0006472).

## ARGUMENT

"The duty to preserve material evidence arises not only during litigation but also extends to that period before litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001); *see also* Fed. R. Civ. P. 37(e) ("If electronically stored information that should have been preserved *in the anticipation . . . of litigation . . .*) (emphasis added). "Once a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy and implement a litigation hold to ensure the preservation of relevant documents." *Eshelman v. Puma Biotechnology, Inc.*, 2017 U.S. Dist. LEXIS 87282, at *11 (E.D.N.C. June 7, 2017) (internal quotation marks and citation omitted).

Federal Rule of Civil Procedure 37 governs the imposition of sanctions for spoliation of ESI evidence. *See* Fed. R. Civ. P. 37(e); *Nuvasive, Inc. v. Kormanis*, 2019 U.S. Dist. LEXIS 40195, at *5-8 (M.D.N.C. March 13, 2019). As a predicate to receiving any form of sanctions, the moving party must demonstrate:

1) the existence of ESI of a type that should have been preserved,
2) that ESI was lost,
3) the loss of ESI resulted from a party's failure to take reasonable steps to preserve ESI, and

5

4) the lost ESI cannot be restored or replaced through additional discovery.

*Id.*; *see also Eshelman*, 2017 U.S. Dist. LEXIS 87282, at *13.

After making the predicate showing, the movant may obtain an adverse inference instruction by proving that the nonmoving "party acted with the intent to deprive [the movant] of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). The movant may obtain other remedies by demonstrating prejudice resulting from the loss of ESI rather than intent. *Id.* at (e)(1). Such other remedies include the ability to "present evidence and argument to the jury regarding the loss of information" and "jury instructions to assist in [the] evaluation of such evidence or argument." Fed. R. Civ. P. 37, 2015 Advisory Comm.'s Note to Subdivis. (e)(1).

## I. Text Messages Among Department Leaders Should Have been Preserved in Anticipation of Litigation

Drs. Mathew, Martin, and Gadsden served as the chief decision-makers on behalf of Duke with respect to the nonrenewal of Dr. Shaughnessy's contract. D.E. 111-36, Interrogatory No. 7. Dr. Sanders is the Division Chief for the Community Division and has the authority to hire doctors for his division. *See id.* at Request for Admission No. 10. All of these individuals played critical roles during the period of time at issue in this lawsuit, yet only a handful of text messages have been produced from one custodian.

Duke anticipated or should have anticipated litigation as early as February 2017, as reflected in Duke's production and privilege log. Discussions with in-house counsel seeking legal advice related to Dr. Shaughnessy's claims have been withheld in discovery dating back to February 8, 2017. *See* Exhibit 8, DEFS0006519-6524. Furthermore, emails

6

dating to early February 2017 among administrators at Duke clearly indicate that a legal challenge would be forthcoming if Dr. Shaughnessy's internal appeals were denied and repeatedly reference Duke's in-house counsel, Kate Hendricks. Exhibit 9, DEFS0007384-7387, (*see* Dawson email from Feb. 8, 2017). Additionally, Dr. Jeffrey Gadsden, one of Duke's decision-makers, admitted that he began to write down a list of reasons to justify Dr. Shaughnessy's nonrenewal in early February 2017 at the suggestion of his wife—who is an attorney—because he anticipated that the situation with Dr. Shaughnessy "may end up contentious." Exhibit 11, Gadsden Dep. 97:1-98:24.

At any rate, Duke was certainly on notice of the potential for litigation by at least June 16, 2017 when it was notified of Dr. Shaughnessy's pending EEOC charge. Exhibit 10, DEFS0006472-6475; D.E. 15-2. By that time, Dr. Shaughnessy had internally appealed his nonrenewal, filed a grievance with the Faculty Hearing Committee, and begun the EEOC process. Duke should reasonably have anticipated that litigation would ensue at least by the time it was notified that Dr. Shaughnessy had filed a formal charge of discrimination, which is the first step that a potential plaintiff must take to file suit under the ADA.

After becoming aware of Dr. Shaughnessy's claims, Duke had a duty to preserve evidence related to his claims. Correspondence between the admitted decision-makers falls within the scope of this duty. Furthermore, Dr. Shaughnessy's charge of discrimination encompassed his failed attempt to transfer to Duke Regional Hospital and correspondence between the decision-makers and Dr. Sanders should have also been preserved. D.E. 15-2. Such evidence is patently material to Dr. Shaughnessy's claims.

7

## II. Critical Text Messages Have been Lost from Multiple Custodians

At the outset, Defense counsel has admitted to Plaintiff's counsel that text messages have been lost. *See* Exhibit 7, Oct. 17-23, 2019 Emails ("It is my understanding that texts were deleted as a matter of course before there was any threat of litigation . . .") ("Your references to text messages are meaningless if we do not have the message anymore. We can only produce what we have.").

As for specific custodians:

a) <u>Dr. Gavin Martin</u>: Dr. Martin is the only custodian from whom Duke was able to produce any text messages. However, it is also clear that messages were lost. For example, an email produced by Duke in discovery clearly shows that Dr. Martin exchanged text messages with Dr. Sanders, but no messages were produced. Exhibit 4, DEFS0011100; Exhibit 5, at DEFS0010588. Further, Dr. Shaughnessy produced messages between himself and Dr. Martin during the time period in question, but no messages were forthcoming from Duke. *See* Exhibit 12, PL0005307-5311. Evidence of Dr. Martin's later conversations with Drs. Mathew and Gadsden also indicate that similar conversations were likely occurring during this period regarding Dr. Shaughnessy's nonrenewal. *See* Exhibit 2, DEFS0012779.

b) <u>Dr. Eddie Sanders</u>: No text messages were produced from Dr. Sanders. Dr. Sanders exchanged messages with Dr. Martin, as noted above. Further, during discovery, Plaintiff was able to produce messages between himself and Dr.

Sanders related to his pending transfer. Exhibit 13, PL0005301. Dr. Sanders testified that his phone was broken in the Summer of 2017, but a backup was later recovered. Exhibit 14, Sanders Dep. 164:16-19; Exhibit 7, Oct. 17-23, 2019 Emails. Despite Dr. Sanders' ability to recover data from his broken phone, still no messages were forthcoming in response to Plaintiff's requests.

c) <u>Dr. Joseph Mathew</u>: No messages were produced from Dr. Mathew. Later messages clearly show that Dr. Mathew used text messages to exchange information related to Dr. Shaughnessy. Exhibit 2, DEFS0012779. A backup of Dr. Mathew's text messages was also recovered, but no messages were forthcoming in discovery. Exhibit 7, Oct. 17-23, 2019 Emails.

d) <u>Dr. Jeffrey Gadsden</u>: No text messages were produced from Dr. Gadsden. Dr. Gadsden stated that he used an auto-delete protocol which was not suspended in anticipation of litigation despite the fact that he felt the need to document events after Dr. Shaughnessy's nonrenewal at the suggestion of his wife who is an attorney. Exhibit 11, Gadsden Dep. 282:14-283:15.

## III. Text Messages Were Lost because Duke Failed to Take Reasonable Preservation Steps

Duke failed to take reasonable steps to preserve ESI when it belatedly issued inadequate litigation holds to its employees. First, Duke did not issue a litigation hold to all relevant employees even after receiving notice of Dr. Shaughnessy's EEOC charge. While some employees were apparently instructed to preserve evidence in 2017, at least

9

one central figure, Dr. Sanders, was not issued a litigation hold until after Dr. Shaughnessy had filed the instant suit. *See* Exhibit 15, Martin Dep. 269:19-270:6 (told to preserve evidence at EEOC stage); Exhibit 14, Sanders Dep. 163:11-164:15 (not instructed to preserve evidence until after a news article appeared in the student newspaper describing Dr. Shaughnessy's lawsuit in 2018). Second, even after belatedly receiving a litigation hold notice, Dr. Sanders testified that he was *not* instructed to *preserve* evidence, merely not to delete any correspondence. Exhibit 14, Sanders Dep. 163:25-164:5. Finally, Dr. Gadsden testified that he used an automatic deletion protocol for his device and was not asked to preserve any materials until some indeterminate time after Dr. Shaughnessy's employment with Duke ended (i.e. after June 30, 2017). Exhibit 11, Gadsden Dep. 282:14-283:15.

By June 16, 2017, if not in February 2017, Duke could and should have instructed the key employees implicated in Dr. Shaughnessy's claims to create backup files of their text messages and stop any automated deletion protocols. Several, if not all, of the decision-makers owned iPhones and it is exceedingly easy to backup messages to ensure they are not accidentally lost or deleted. Duke need not have collected the messages at that time or taken any further action; taking the simple step of instructing its employees to preserve (not just to "not delete") messages would have been enough to discharge its duty. Duke should have also instructed its employees to immediately stop any automatic deletion protocols. *See Eshelman*, 2017 U.S. Dist. LEXIS 87282, at \*11. It is imminently reasonable to ask key managerial employees to preserve text messages in an era where

10

every message can be backed up with the push of a few buttons at little to no expense.[2] Duke's failure to utilize reasonable preservation efforts resulted in the loss of critical text messages related to Dr. Shaughnessy's claims.

**IV.     Lost Text Messages Could Not be Restored or Replaced Through Additional Discovery**

After learning of Duke's failure to preserve text messages, Plaintiff attempted to compensate for the loss through deposition testimony from the individuals involved. Plaintiff questioned Dr. Martin about the decision-making process in December 2016 and asked Dr. Sanders about messages he exchanged with Dr. Martin regarding Dr. Shaughnessy. Exhibit 15, Martin Dep. 124:16-125:25, Exhibit 14, Sanders Dep. 37:1-22. Neither deponent was able to provide any specifics. Dr. Martin could only state that there were in fact discussions between himself, Dr. Mathew, and Dr. Gadsden. Exhibit 15, Martin Dep. 124:16-125:25. As for Dr. Sanders, he was sure that he texted with Dr. Martin but could not say how many times and was unsure if he had also texted with Dr. Mathew. Exhibit 14, Sanders Dep. 37:1-22, 75:12-18. Without this information, the timeline of events leading to the nonrenewal decision in late 2016 and the timeline of events leading to the failure of Plaintiff's attempted transfer hinder Plaintiff's ability to prosecute his case. In addition, the most accurate rendition of what was actually texted between these individuals are the texts themselves, which have been lost by Duke.

---

[2] Currently, 50 gigabytes of cloud storage costs $0.99 per month and this price has remained stable for several years. *See* https://support.apple.com/en-us/HT201238. The total cost to Duke to preserve these four employees' text messages from February 2017 through the commencement of discovery in March 2019 would have been $102.96.

11

## V. Plaintiff Has Suffered Prejudice as a Result of Duke's Failure to Preserve Text Messages

Without access to the lost text messages, Plaintiff will suffer prejudice at trial because he will not be able to fully attack the credibility of Duke's arguments regarding the process leading up to his nonrenewal and the failure of his transfer attempt. The lost text messages would have allowed Plaintiff to reconstruct how and when information pertaining to Plaintiff's transfer and nonrenewal were communicated among Duke's decision-makers. Written communications are inevitably more accurate than the memory of the individuals involved. The lost text messages could have contained direct evidence or at least would have likely indicated when, where, and how often Duke's decision-makers debated Dr. Shaughnessy's fate. Without their contemporaneous correspondence, Plaintiff lacks the ability to fully cross examine Duke's decision-makers. For example, Duke's decision-makers have testified that they met in person more than once to discuss Dr. Shaughnessy's nonrenewal, but could not explain when these meetings occurred or how many meetings occurred. Exhibit 16, Mathew 30(b)(6) Dep. 8:18-25, 36:1-21; Exhibit 15, Martin Dep. 124:16-125:25. Access to the lost text messages would have allowed Plaintiff to better attack the basis of Duke's arguments regarding the consideration of Dr. Shaughnessy's nonrenewal and to critically examine any influence that Duke's decision-makers had upon Dr. Sander's decision not to hire Dr. Shaughnessy.

## VI. Duke's Agent, Dr. Martin, Acted with the Intent to Deprive Plaintiff Access to Lost Text Messages for Use in Litigation

Abundant circumstantial evidence points to an attempt by Dr. Martin to intentionally deprive Plaintiff access to probative text messages for use in this litigation.

12

Duke's production conspicuously lacks any communications between Dr. Martin and the other decision-makers prior to March 2017. Yet Duke's own production demonstrates that at least some of Dr. Martin's text messages from the period preceding and immediately following the January 6, 2017 nonrenewal were preserved. Duke produced text messages from Dr. Martin following the October 19, 2016 divisional meeting and messages between Dr. Martin and a nurse in January 2017. Exhibit 1, DEFS0012778; D.E. 121-12. Duke also produced emails indicating that Dr. Martin exchanged text messages with Dr. Sanders in January 2017. Exhibit 4, DEFS0011100. When asked whether he had deleted any messages prior to receiving a litigation hold notice, Dr. Martin stated that he had no recollection prior to receiving the notice "and there was (sic) no restrictions on me deleting emails prior to" that time. Exhibit 15, Martin Dep. 270:1-6. Viewed in conjunction with Dr. Martin's later text messages which show substantive discussion of issues involving Dr. Shaughnessy among Duke's admitted decision-makers, Exhibit 2, DEFS0012779-12781, this circumstantial evidence supports the conclusion that Dr. Martin intentionally spoliated evidence to prevent Dr. Shaughnessy from using the lost messages in the instant litigation.

### VII. Plaintiff Should Receive an Adverse Inference Jury Instruction and be Allowed to Present the Spoliation Issue to the Jury

To remedy Duke's failure to preserve ESI in anticipation of litigation, Plaintiff requests that this Court instruct the jury that it must infer that text messages intentionally lost by Dr. Martin were unfavorable to Duke and/or that Plaintiff be permitted to present argument to the jury regarding the loss of other text messages exchanged between Duke's

13

key employees. Plaintiff has suffered prejudice because of Duke's failure to act reasonably in preserving ESI and Duke should be held to account.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court provide a remedy for Duke's spoliation of ESI evidence pursuant to Fed. R. Civ. P. 37(e).

This, the 25th day of September, 2020.

**Kornbluth Ginsberg Law Group, P.A.**

/s/ Joseph E. Hjelt
Michael A. Kornbluth
N.C. State Bar No. 27928
Joseph E. Hjelt
N.C. State Bar No. 53497
3400 Croasdaile Drive, Suite 300
Durham, NC 27705
Telephone:   (919) 401-4100
Facsimile:   (919) 401-4104
Email: mkornbluth@KGLawNC.com
           jhjelt@KGLawNC.com

## CERTIFICATE OF WORD COUNT

The undersigned counsel for Plaintiff certifies the foregoing ***MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS*** does not exceed 6,250 words in compliance with L.R. 7.3(d).

This, the 25th day of September, 2020.

**Kornbluth Ginsberg Law Group, P.A.**

/s/ Joseph E. Hjelt
Michael A. Kornbluth
N.C. State Bar No. 27928
Joseph E. Hjelt
N.C. State Bar No. 53497
3400 Croasdaile Drive, Suite 300
Durham, NC 27705
Telephone: (919) 401-4100
Facsimile: (919) 401-4104
Email: mkornbluth@KGLawNC.com
jhjelt@KGLawNC.com

15

Case 1:18-cv-00461-CCE-JEP   Document 154   Filed 09/25/20   Page 15 of 16

# CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date filed the foregoing ***MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS*** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Robert A. Sar (N.C. Bar No. 22306)
Patrick D. Lawler (N.C. Bar No. 47882)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
8529 Six Forks Road, Ste. 600
Raleigh, N.C. 27615
Telephone: (919) 787-9700
Email: bob.sar@odnss.com
Email: patrick.lawler@odnss.com
*Attorneys for Defendant Duke University*

John A. Zaloom (N.C. Bar No. 30557)
Moore & Van Allen PLLC
P.O. Box 13706
Research Triangle Park, N.C. 27709
Telephone: (919) 286-8182
Facsimile: (919) 4168380
Email: johnzaloom@mvalaw.com
*Attorney for Defendant Private Diagnostic Clinic, PLLC*

This, the 25th day of September, 2020.

**Kornbluth Ginsberg Law Group, P.A.**

/s/ Joseph E. Hjelt
Michael A. Kornbluth
N.C. State Bar No. 27928
Joseph E. Hjelt
N.C. State Bar No. 53497
3400 Croasdaile Drive, Suite 300
Durham, NC 27705
Telephone:   (919) 401-4100
Facsimile:   (919) 401-4104
Email: mkornbluth@KGLawNC.com
          jhjelt@KGLawNC.com